EMIL J. SADLOCH, PLAINTIFF-RESPONDENT, v. ALEXANDER ALLAN, COUNTY CLERK OF BERGEN COUNTY, AND JULIUS E. KRAMER, DEFENDANTS-APPELLANTS.

Argued September 23, 1957—Decided September 30, 1957— Opinion delivered October 14, 1957.

*Mr. James A. Major* argued the cause for plaintiff-respondent.

*Mr. Julius E. Kramer* argued the cause for defendants-appellants (*Messrs. Chandless, Weller & Kramer,* attorneys).

The opinion of the court was delivered by
FRANCIS, J. The appeal in this election matter involves the legal propriety of a restraint issued by the Law Division of the Superior Court against the defendant Alexander Allan, County Clerk of Bergen County, and the defendant Julius E. Kramer. The judgment prohibits Allan from placing the name of Kramer as a candidate for the office of mayor of Garfield on the official ballot for the general election to be held in November 1957. It also enjoins Kramer from asserting that "he is in fact a candidate" for that office. Review was sought in the Appellate Division, but we certified on our own motion.

The factual situation which gave rise to the controversy is not complicated. Plaintiff Sadloch and defendant Kramer

were rivals in the primary election of April 16, 1957 for the Republican party nomination for the office of mayor of Garfield. Sadloch won. Prior to primary day one Benti had filed a petition as an independent candidate for the office, so as to be eligible to compete in the November general election. *N. J. S. A.* 19:13–1 to 8. Shortly after Sadloch's victory, Benti withdrew his candidacy. Thereupon Kramer presented a petition apparently signed by the requisite number of qualified voters nominating him as the successor independent candidate for mayor, and applied to have his name printed on the official ballot for the November election. The county clerk announced that he had accepted the petition and would include the name on the ballot. Sadloch instituted this proceeding in lieu of prerogative writ to prevent such action.

Since the exhaustive and instructive opinions in *Wene v. Meyner,* 13 *N. J.* 185 (1953), and *Stevenson v. Gilfert,* 13 *N. J.* 496 (1953), there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections. Such regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his constitutional right to vote for any person he chooses. *Rose v. Parker,* 91 *N. J. L.* 84, 86 (*Sup. Ct.* 1917).

The specific problem presented here calls for consideration of certain sections of the Election Law and their prohibitory effect, if any, upon the attempted independent candidacy at the ensuing general election of an individual who sought and was defeated at the polls in the primary for the nomination of his political party for the same office.

A candidate for elective office may be nominated to run as an independent candidate at the general election in November by a petition signed by the requisite number of qualified persons and filed 40 days before the primary is held. *N. J. S. A.* 19:13–1, 3, 5, 9. Or he may seek the nomination of the political party with which he is affiliated at the primary election. In this event, 40 days

prior thereto he must file a petition signed by the specified number of qualified voters who are members of his political party. *N. J. S. A.* 19:23–5, 7, 14. The names of all such candidates are printed upon a public ballot to be used at the election, *N. J. S. A.* 19:23–24, 27, including, of course, those persons who are vying for the party designation for a particular office.

Whichever path to nomination is chosen by a candidate, he must execute a formal acceptance which is annexed to the petition. *N. J. S. A.* 19:13–8. This subsection dealing with the primary nomination provides:

"No candidate so named shall sign such acceptance if he has signed an acceptance for the primary nomination or any other petition of nomination under this chapter for such office."

And *N. J. S. A.* 19:13–4, which prescribes the form and contents of the petition, reiterates:

"No such petition shall undertake to nominate any candidate who has accepted the nomination for the primary for such position."

Finally, as if to remove any conceivable question on the subject, *N. J. S. A.* 19:23–15, which controls the direct nomination procedure in the event that a vacancy occurs after the filing of the original petition but before the primary, says:

"No candidate who has accepted the nomination by a direct petition of nomination for the general election shall sign an acceptance to a petition of nomination for such office for the primary election."

The effect of these enactments is to impose a choice upon an intending candidate. He cannot pursue a party nomination in the primary by means of the statutory petition, and at the same time by the same means declare as an independent aspirant for the same office at the general election. At least 40 days before the primary he must decide whether to enter the party primary or to bypass it for direct nomination as an independent in the November

election. If he elects to put himself forward at the earlier plebiscite and is defeated for the party designation, he must abide by his deliberate choice.

■ Thereafter the official ballot for the general election is required to contain the names of the primary nominees of the various political parties and of those nominated by direct petition. And space must be allowed either in the paper ballot or on the voting machine so that a citizen may cast a vote for a candidate of his personal choice whose name is not listed. *N. J. S. A.* 19:14–1, 2, 8; 19:15–28.

These references to the pertinent sections of the Election Law make it plain that a candidate's name will appear on the printed ballot for the general election (1) if he participates in and is successful at the primary, or (2) if he foregoes the primary and accepts direct independent nomination by petition. If a vacancy occurs in either type of candidacy, a successor candidate may be substituted if he is selected in the manner prescribed and within the time limited. *N. J. S. A.* 19:13–16 to 19:13–21, inclusive. Manifest also is the legislative design to protect the integrity of the nominating process at primary elections and to withhold the privilege of inclusion on the ballot printed at public expense of the name of a person who assumes the cloak of an independent candidate after professing membership in a particular party, adherence to its general principles, and on that basis seeking the designation as a standard bearer of the party for elective office.

An excellent discussion of the subject appears in *State ex rel. McCarthy v. Moore,* 87 *Minn.* 308, 92 *N. W.* 4, 5, 59 *L. R. A.* 447 (*Sup. Ct.* 1902). There the Supreme Court of Minnesota considered an attack on a section of the election law which specifically barred the printing on the ballot of the name of a defeated primary candidate who endeavored to run in the general election. In refusing to order the name to be printed, the court said:

"The right to vote and the right to hold office are declared.to be co-ordinate. The methods by which these rights shall be protected and enforced are, of necessity, left to legislative action; but we

shall readily assume that it is an inherent right of citizenship that only such a system of regulation be provided for as will be just and reasonable, and operate in its application to all voters and to candidates equally. That any system will accomplish absolute equality in all things must not and cannot be expected. \* \* \* Of necessity, there must be upon such a ballot a regular order in which the names shall be placed, and other features incident to the procedure that tend to create incidental advantages to one candidate over another; but *it would seem proper that any candidate who seeks the assistance of the primary election law* \* \* \* *should be bound by the obligations of good faith and the dictates of fair play to which he has voluntarily subjected himself.* It is said by this law to a candidate, 'If you prefer the advantages of a party nomination which is quite desirable, you may seek it; but if the state prepares and prints your ballot and regulates nominations so as to secure the utmost freedom of choice among the members of your party, it does so upon the submission by you to the condition that, *if you are unsuccessful, it will not thereafter print your name upon the ballot to defeat your opponent;'* and it should not be said \* \* \* that it is an unreasonable condition, \* \* \* and it cannot be said either that in this effort at regulation of political methods the unsuccessful aspirant for a party nomination is deprived of the right to run for office, or the majority of voters deprived of his services in office, if they desire to secure them; \* \* \*. That it is more advantageous to the candidate to have his name printed on the ballot instead of requiring it to be written in is true, but in this case, under the prohibition of the statute to which he submitted, petitioner voluntarily denied himself that advantage. *While he cannot have his name printed, because he has* \* \* \* *surrendered that right, he is still eligible, and may aspire to the office, invite his fellow citizens to vote for him in the blank space* provided for, and secure the office, if he can obtain the requisite support."

And see *Annotation,* 143 *A. L. R.* 603, 605–613 (1943); cf. *Ray v. Blair,* 343 *U. S.* 214, 72 *S. Ct.* 654, 96 *L. Ed.* 894 (1952).

The Election Law of our State has undergone many revisions. In 1915 a supplement to section 53 of the 1898 revision, *L.* 1898, *c.* 139, dealt with the matter under discussion for the first time and employed language substantially the same as the Minnesota act. It said:

"\* \* \* [t]hat any person whose name was printed upon the official ballot of any party, at the preceding primary who failed of nomination, shall not be eligible to have his name printed on the official ballot for said general election by petition." *L.* 1915, *c.* 100.

At that time, so far as our research has disclosed, there was no provision prohibiting a candidate from signing an acceptance to a petition of direct nomination if he had already accepted in writing a petition nominating him to run in the primary for his party's nomination for the same office.

The validity of this regulation was attacked and sustained in *Rose v. Parker, supra*. In that case Rose and one Johnson contested in the primary for the Republican nomination for sheriff. Johnson was successful, but died before the general election. Rose and another person then filed petitions as the Republican party nominees. On the refusal of the county clerk to print his name on the ballot, Rose sought a writ of *mandamus*.

The Supreme Court sustained the clerk, saying among other things:

"That the legislature has the right to regulate the preparation of ballots for an election must be conceded, and when it has prescribed the kind of ballot to be used at the general election, it is within its constitutional right so long as it does not prevent any elector from voting for any person he chooses, and there is nothing in this act which prevents any voter from placing the name of relator on his ballot."

The general revision of 1920 does not contain the 1915 restriction on the printing of names. *L.* 1920, *c.* 349, *Article* XIII, § 2. However, a rather elaborate amendment of the 1920 act was adopted in 1921. *L.* 1921, *c.* 196. It includes for the first time the stipulation that no direct nomination petition shall "undertake to nominate any candidate who has accepted the nomination for the primary for such position," *Article* XII, § 4, and that the candidate shall not sign his acceptance thereof "if he has signed an acceptance for the primary nomination." *Article* XII, § 8. Both of these restrictions were carried into the full revision that took place in 1930, *L.* 1930, *c.* 187, *par.* 113, § 4; *par.* 117, § 8; *par.* 280, § 15, and as set forth above represent the present state of the law.

Undoubtedly, these current provisions which are now before us were intended to serve the same purpose as the 1915 act. But in any event, of themselves they render the conclusion inescapable that a defeated primary candidate cannot have his name on the general election ballot as an independent candidate for the same office.

█ Kramer contends that the restraint does not apply where such defeated candidate is nominated by direct petition after the primary as a successor and substitute for a person previously nominated to run independently in the general election. In support of this position, he refers to *N. J. S. A.* 19:13–19 which provides:

"If the candidate vacating the nomination was nominated directly by petition his successor shall be nominated in the same manner by direct petition; which new petition of nomination must be filed with the Secretary of State or county clerk, as the case may require, not later than thirty-four days before the day of election whereat such candidate is to be voted for."

And he says that having complied with that section, he became the successor independent candidate and entitled to have his name on the general election ballot just as if he were named in the original pre-primary petition.

The argument, if accepted, would subvert a basic legislative design for the conduct of elections and would destroy the utility of primaries. It would open an avenue for an individual to be a candidate in both primary and general elections, regardless of the result of the primary. After filing a petition for the party nomination, an unscrupulous person might arrange for a dummy nominee for the general election by direct petition. Upon losing in the primary, he would arrange for the dummy to withdraw and for his own substitution by appropriate new petition. Such an undesirable possibility or result should never be sanctioned unless the legislative language is so clear that no other reasonable interpretation is possible. And even if the withdrawal came about innocently and fortuitously, as appears to be the situation here, the statutory declarations outlined

are so clearly opposed to appellant's view that the county clerk would be acting *ultra vires* in printing his name on the ballot.

One aspect of appellant's criticism of the trial court's judgment is conceded to be well taken. The restraint contained therein is measured by "the prayers for judgment contained in the complaint." Injunctive relief should always be specifically defined rather than granted by reference to a complaint. *R. R.* 4:67–5. But the error here is more vital. The judgment as formulated restrains Kramer from "asserting that he is in fact a candidate for the office of Mayor of the City of Garfield."

Although the cases cited above, as well as those referred to in the *A. L. R.* annotation, sanction the procedural limitation against printing the name of the defeated primary candidate on the ballot under the circumstances described, they all recognize his right to be a candidate on a write-in or sticker basis, as well as the right of all qualified electors to vote for him by such means. 1947 *Constitution, Art.* II, § 3; *Stevenson v. Gilfert, supra,* 13 *N. J.* at *page* 506; *cf. State ex rel. O'Sullivan v. Swanson,* 127 *Neb.* 806, 257 *N. W.* 255 (*Sup. Ct.* 1934); *State ex rel. Sundfor v. Thorson,* 72 *N. D.* 246, 6 *N. W.* 2d 89, 143 *A. L. R.* 599 (*Sup. Ct.* 1942). For this reason, the judgment must be modified by deleting therefrom the inclusion by reference of paragraph C of the prayers for judgment in the complaint, the effect of which is to restrain Kramer from asserting that he is a candidate at the forthcoming general election.

Finally, objection is made to the form of action pursued by the plaintiff in seeking the aid of the Superior Court. The complaint is designated as a proceeding in lieu of prerogative writ, and it was instituted in a summary fashion by order to show cause. Appellant insists that the proper course for plaintiff to have adopted was to tender to the County Clerk Allan written objections to his petition of nomination as the successor independent candidate, and to refrain from seeking court intervention until the clerk heard the objections in a summary fashion, after notice to the

adversary candidate. *N. J. S. A.* 19:13–10, 11. The latter subsection contains a qualification upon the proceeding before the clerk, namely, that he shall pass upon the controversy "unless an order shall be made in the matter by a court of competent jurisdiction." It would appear from this proviso that the Legislature contemplated and sanctioned court action prior to decision by the administrative officer. However, the circumstances which would justify judicial intervention before the administrative remedy had been exhausted appear to be set forth in the next subsection of the act, *N. J. S. A.* 19:13–12. This authorizes the filing of a verified complaint setting forth any invasion or threatened invasion of the candidate's rights under the petition of nomination filed with the county clerk, and directs the Superior Court to hear the matter in a summary way and make such order as will protect and enforce the rights of such "candidates."

At this point it may be noted that the pleadings of the parties agree that Allan had accepted Kramer's petition for filing and had announced that his name would be printed on the ballot.

The Election Law should be construed liberally to accomplish its salutary purposes. *Kilmurray v. Gilfert,* 10 *N. J.* 435, 440 (1952). One of these purposes is to purify the politics of the State by preventing fraud and wrongdoing in the nominating procedure. And incidental to the effectuation of the legislative intention is the right of the successful candidate in the party primary to have and hold the advantages which flow to him from his victory. Among these are the right to have his name printed on the official ballot at the general election and the absence from the ballot of that of his primary adversary. To secure those earned benefits the expression "invasion or threatened invasion" or the rights of "any" candidate ought to be construed broadly when resort is had to court action. Regard for these principles and awareness of the undisputed factual situation presented here leads us to the conclusion that use of the special remedy was in order.

 Although the summary statutory procedure (which may be regarded as embraced by *R. R.* 4:85–1) seems to have been invoked, the complaint is designated as one in lieu of prerogative writ. Error, if any, in such a caption would not stand in the way of a determination of the issue on the merits.

As modified, the judgment is affirmed. Costs to respondent.

*For modification*—Chief Justice WEINTRAUB, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and FRANCIS—7.