106 N.J. Super. 567 (1969)
256 A.2d 314
IN THE MATTER OF THE PETITION OF WALTER C. KEOGH-DWYER, CANDIDATE FOR GENERAL ASSEMBLY OF THE FIFTEENTH DISTRICT.
Superior Court of New Jersey, Law Division.
Decided August 6, 1969.
*568 Mr. Walter C. Keogh-Dwyer pro se.
Mr. Wesley L. Lance, attorney for respondent Walter E. Foran.
*569 Mr. Emanuel A. Honig, attorney for respondent Robert E. Littell.
FRITZ, J.S.C.
In the Republican primary election of June 3, 1969 Douglas Gimson, Robert Littell and Walter C. Keogh-Dwyer each sought one of the two Republican nominations for member of the General Assembly from the Fifteenth Assembly District. Each appeared on the primary ballot be virtue of regular, proper and timely petitions filed on or before the fortieth day next preceding the day of the primary election, pursuant to N.J.S.A. 19:23-14. The Fifteenth Assembly District is constituted by the counties of Hunterdon, Sussex and Warren, and its two assemblymen are elected at large from the district.
Gimson, whose residence was in Hunterdon County, and Littell, whose residence is in Sussex County, the incumbent assemblymen, were bracketed pursuant to N.J.S.A. 19:14-12. Gimson polled 11,477 votes, Littell 11,266, and Keogh-Dwyer 4,870. The latter is a Sussex County resident.
The petition herein was filed by Keogh-Dwyer, presumably under the warrant of N.J.S.A. 19:29-1(b). The petition asserts, as is the fact, that Gimson died on May 15, 1969, 19 days before the primary election. The petitioner seeks a declaration of nullity as to Gimson's nomination, and a determination that Keogh-Dwyer is a "lawful nominee."
Following the election the Republican State Committee on June 30, 1969 filed with the Secretary of State, ostensibly pursuant to N.J.S.A. 19:13-20, a statement of selection appointing Republican Walter E. Foran to fill the vacancy in the nomination for the general election produced by virtue of Gimson's death.
The foregoing facts are the subject of no significant dispute.
While statutory regulation may make the fact irrelevant (see N.J.S.A. 19:23-12), it does not appear that any effort was made by anyone between the time of Gimson's death and the primary election to remove his name from the ballot *570 or to replace it with the name of any other candidate. Additionally, it is likely that a large portion of the electorate was well aware of Gimson's death prior to the primary, and it is more probable than not that many, if not most, of those casting a vote for him did it fully cognizant of the fact he was dead. Gimson was an incumbent assemblyman; it can be reasonably inferred he was politically active in his district. Beyond this, it is evident from the proof that letters were addressed to many of the electorate in Hunterdon and Sussex Counties, at least, advising the voters of Gimson's death and urging that they vote for him, thereby creating a vacancy which might be filled by party committee selection of a Hunterdon County resident.
Succinctly stated, the novel question thus presented is what situation results when a candidate for party nomination dies prior to the primary election but at a time too late to substitute another in his place, and such candidate polls enough votes to nominate him for the office. Stated in other terms, the inquiry is whether in such circumstances a vacancy results or whether the purported nomination is null and void. This distinction between a vacancy and a void nomination is significant because the Legislature has provided clear, certain and different remedies in each of these cases. If a vacancy exists, a party committee certificate shall fill it. N.J.S.A. 19:13-20. If the nomination is void, the candidate receiving the next highest number of votes shall succeed to the nomination. N.J.S.A. 19:3-10. The provisions of N.J.S.A. 19:3-25, and especially the first paragraph thereof declaring an office to be vacant if a nomination or election has been declared null and void, do not intrude upon this rationale, or else there would be an insoluble conflict between N.J.S.A. 19:3-10 and 19:13-20. It is to be noted that the latter statute speaks of a "vacancy, however created."
Determinations of the issue in other jurisdictions suggest a collateral inquiry: what is the effect of votes knowingly cast for a dead candidate, with respect to the result of the *571 election as regards other candidates? See Annotation, 133 A.L.R. 319.
The answer must be derived from intendment of the Legislature as expressed in the election statutes, limited only by constitutional considerations. Lynch v. Borough of Edgewater, 8 N.J. 279 (1951); Abrams v. Dept. of Civil Service of N.J., 70 N.J. Super. 559 (App. Div. 1961). As is said in Sharrock v. Borough of Keansburg, 15 N.J. Super. 11 (App. Div. 1951):
The processes of public elections in this country are not of common law origin. Except for the express requirements of the constitutional security they are the creatures of statutory law. Therefore the courts refrain from an indulgence in any judicial action that refashions legislation regulating and facilitating the conduct of elections and which is calculated to secure the right of suffrage and the free expression of the choice of the voter. (at p. 16)
Guidelines for this search are found in the catechism of statutory construction set forth in Fiscella v. Nulton, 22 N.J. Super. 367 (App. Div. 1952):
"* * * In considering the legislative intendment, the statutory words are to be given their common usage. Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, 503 (1950). And, if the legislative intendment is clear and unambiguous, the court will not `* * * indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed.' Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951). `A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided. 2 Sutherland Statutory Construction (3d ed.), sec. 4705, p. 339.' Hoffman v. Hock, 8 N.J. 397, 406, 407 (1952). In the construction of a statute, it must be so construed as a whole with reference to the system of which it is a part. Conflicting provisions ought to be reconciled in accord with the general intent. Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287, 298 (1949)."
Applying these principles to the task at hand, legislative intent is clear in one respect beyond any need for construction: interrelated, integrated and precise statutes demonstrate that, with a single exception not applicable to the *572 General Assembly, after 34 days prior to any election the ballot is immutable. N.J.S.A. 19:13-19, 19:13-20, 19:13-21, 19:23-12, 19:23-14 (note three-day exception in certain events and in certain offices, specifically excluding the General Assembly, per N.J.S.A. 19:23-13), and 19:27-11. Deletions, additions and substitutions are not possible.
It is also of some moment that the death of a candidate or nominee is considered in specific terms only in three statutes. N.J.S.A. 19:23-12 provides for the certification of a substitute candidate by a committee on vacancies nominated by the signers of the petition naming the original, and dead or resigned, candidate. This statute applies only to certain offices, including the General Assembly. A correlative statute, N.J.S.A. 19:23-13, is applicable to offices other than those included in N.J.S.A. 19:23-12; consequently, it excludes the General Assembly, and provides for a new petition. Even here the time for the new petition is limited to cases of death or declination occurring within three days of the last day for filing the original petition. N.J.S.A. 19:13-18, appearing in an article concerning vacancies, deals with death of nominees.
Nowhere do the statutes deal in specific terms with procedure in the event of the death of a candidate between the last day on which his name can be put on or taken off a ballot and the day of the election.
Accordingly, the legislative intent must be derived from the election statutes reasonably to be considered in pari materia. Pritel v. Burris, 94 N.J. Super. 485, 490 (App. Div. 1967). But it must be from those statutes, and not from a refashioning judicial action. Sharrock v. Borough of Keansburg, supra.
Petitioner here insists that in such a situation the expression of the will of the electorate in nominating a dead man must be treated as a nullity. He concedes that no particular statute says so, but argues, as a matter of rationality, that otherwise the nomination is of one not in being, not capable of legal residence and, as a matter of fact, even *573 disqualified to vote. He urges that the incapbility of such a nominee to comply with such pre- and post-election requirements as campaign fund statements (N.J.S.A. 19:44-1 and 19:44-2) is a demonstration of legislative intent that the candidate must be alive at the time of the election. In this latter regard we note in passing that the statutes dealing with campaign fund reports do not require a report by the candidate but permit (and require) reports by the campaign manager.
The argument is not without at least superficial persuasiveness. But while reason may be a comely handmaiden of intelligent legislation, other considerations may not properly be ignored.
The Legislature has chosen to deal, in a separate article, with circumstances which shall cause the results of an election to be null and void. N.J.S.A. 19:3-7 et seq. It has immediately thereafter declared the effects and sanctions in such event. N.J.S.A. 19:3-10 et seq. Having thus considered, memorialized and penalized certain conditions throught to be sufficiently culpable to warrant a declaration of nullity, the Legislature has, in our view, expressed an intent thus to limit those occurrences sufficient to nullify an election. While we recognize that such an invocation of the maxim expressio unius est exclusio alterius is, "[A]t best * * * only an aid towards construction, always to be used with `great caution.' Gangemi v. Berry, 25 N.J. 1, 11 (1957)," Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 471 (App. Div. 1962), affirmed 39 N.J. 355 (1963), we believe its aid here, not to reach an end or achieve a result but to ascertain intent, is entirely appropriate. Support in this direction is to be found from an examination of N.J.S.A. 19:3-9, where even conduct forbidden under certain circumstances is to be forgiven under others. It is apparent that the Legislature recognized the harsh result in the voiding of an election and intended it to eventuate only in the case of an "offense" proscribed and not justified.
*574 We conclude, then, that when a candidate dies after the time limited for replacing his name on the primary ballot, but before the election, and that candidate polls sufficient votes for nomination, his nomination is not null and void, but rather creates a vacancy. This being so, it follows that such vacancy is to be filled in the manner prescribed by N.J.S.A. 19:13-20, as was here done.
This conclusion is consistent with the majority rule from other jurisdictions. As set forth in Annotation, "Elections  Dead or Disqualified Candidate," 133 A.L.R. 319:
"The general rule is that votes cast for a deceased, disqualified, or ineligible person, although ineffective to elect such person to office, are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates." (at p. 320)
This majority rule has found acceptance in New Jersey in analogous cases. McCarthy v. Reichenstein, 50 N.J. Super. 501 (App. Div. 1958); Haack v. Ranieri, 83 N.J. Super. 526 (Law Div. 1964).
We believe the rule to be sound. A simple hypothesis will demonstrate the catastrophic potentialities of a contrary holding. Suppose, for instance, that an incumbent was so highly regarded that no one chose to run in opposition except some ne'er-do-well incompetent. Should the rule be otherwise, and should death overtake the incumbent within 34 days of the election, the mere accident of death, bearing no relation to the will of the majority or the weal of the State, would serve to elect one not wanted and not qualified to serve. We cannot conceive that the Legislature intended the possibility of such result.
Some jurisdictions which have refused to adopt the majority rule have done so, in part at least, on the theory that properly a vote is a vote for the candidate and not a vote against another. See, for instance, State ex rel. Wolff v. Geurkind, 111 Mont. 417, 109 P.2d 1094, 133 A.L.R. 304 (Sup. Ct. 1941), where it is said,
*575 "* * * Casting a ballot at such an election is an affirmative act, not a negative one. You vote for some person, and though your great interest may be to defeat some candidate, that purpose can be accomplished only by voting for some person in opposition to the one you may want to defeat." (at 109 P.2d 1098)
Regardless of the semantics of constitutions assuring the electorate the right to vote for some one, our statutes demonstrate a legislative intendment that defeat, in a primary at least, is something in addition to not winning, and that candidates whom voters do not want to nominate must respond to this expressed will of the electorate by shouldering certain disabilities. See N.J.S.A. 19:13-4, which prescribes the form and contents of a petition for general election, and which declares that "No such petition shall undertake to nominate any candidate who has accepted the nomination for the primary for such position." Or, as pointed out in Sadloch v. Allan, 25 N.J. 118 (1957), compare the mutually exclusive statutory paths whereby a candidate for office may choose to run for office by party nomination or by petition for general election, but not both. We adhere to the firm conviction that our election statutes invest the electorate at a primary election with the privilege and the obligation not only of nominating a candidate they want to represent the party in the general election but also of rejecting a candidate they do not want.
Even were this theory of the negative vote not valid, the result, in our view, should be the same. It can as easily be said that votes for a dead man are affirmative votes for the then unknown choice of the appropriate informed party committee under N.J.S.A. 19:13-20, in preference to a live candidate named on the ballot. They are, in effect, votes to create a vacancy in preference to voting for a named candidate. Accord: Derringe v. Donovan, 308 Pa. 469, 162 A. 439 (Sup. Ct. 1932); In re Primary Election Held in Lackawanna County, 345 Pa. 228, 27 A.2d 189 (Sup. Ct. 1942). See Shroyer v. Thomas, 368 Pa. 70, 81 A.2d 435 (Sup. Ct. 1951), cited with approval in McCarthy v. Reichenstein, *576 supra, 50 N.J. Super., at p. 505. In this manner the electorate has a choice, even though it may be on one hand for a candidate then unknown by name. To accept the petitioner's thesis would be to deprive the electorate of any choice in the primary upon the death of a candidate within 34 days of the election.
This by itself serves to rebut any reason for the so-called "English rule" or minority rule, that votes cast for a deceased, disqualified or ineligible person are to be treated as void and thrown away, and are not to be counted in determining the result of the election as regards the other candidates, where they were cast by voters who had knowledge of the death or disqualification. 133 A.L.R. 341. It would seem that the greater the knowledge, the more advised the vote, and the more sound the expression of the popular will. Election laws are to be liberally construed so as to effectuate their purpose and not so as to deprive voters of their franchise or render an election void for technical reasons. Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952).
There shall be a judgment dismissing the petition, and declaring Walter E. Foran entitled to a certificate of nomination. It is our opinion that in cases such as this one, where the election law is in many respects uncertain and the challenge is made in good faith and intelligently pursued, costs should not be assessed against the contestant-petitioner, but rather be left to the discretion of the court as they are in the event of any result other than dismissal of the petition. However, we regard the direction of N.J.S.A. 19:29-14 as mandatory, and the judgment shall include costs against the petitioner-contestant.