130 N.J. Super. 266 (1974)
326 A.2d 101
ALFRED J. RIECKER, PLAINTIFF,
v.
CARL R. HARTMANN, BERGEN COUNTY CLERK, DEFENDANT, LAWRENCE FEROLI, INTERVENING DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 24, 1974.
*268 Mr. Joel M. Ellis for plaintiff.
Mr. Michael J. Ferrara, Bergen County Counsel, for defendant.
Mr. R.M. James Ruscick for intervening defendant.
LESTER, J.S.C.
This is a suit involving an interpretation of the New Jersey election laws, Title 19, and their effect upon a fortuitous recipient of write-in votes in a primary election. The issue is novel in that the victorious write-in recipient was also an unsuccessful formal candidate for the opposing party's primary nomination.
Plaintiff Alfred J. Riecker was an unsuccessful candidate for the Republican mayoral nomination in the Borough of Alpine. He filed the necessary petitions and certificates, as required by N.J.S.A. 19:23-5 et seq., and was entered on the ballot for the June 4, 1974 Republican primary. No candidate appeared on the Democratic ballot for the mayoral nomination of that party. Plaintiff was close but unsuccessful in his bid for the Republican nomination. He did, however, receive four write-in votes for mayor in the Democratic primary from four registered Democratic voters, and these votes were sufficient to win the Democratic nomination. Defendant County Clerk Carl R. Hartmann, upon receipt of Riecker's acceptance of the Democratic nomination and an objection filed by plaintiff's successful Republican primary opponent, first determined that plaintiff did not qualify as *269 the Democratic nominee. Defendant county clerk, in a letter dated June 13, 1974, stated that he based his decision upon an interpretation of N.J.S.A. 19:13-8 and N.J.S.A. 19:49-5.
Subsequently, the Alpine Democratic Municipal Committee met and selected Riecker to fill the "presumed" vacancy, pursuant to N.J.S.A. 19:13-20. Thereafter, by letter dated July 8, 1974, defendant Hartmann advised the said Democratic Municipal Committee that Riecker was a qualified Democratic candidate and that his name would be placed on the ballot. However, upon the receipt of further objections and after consultation with the county counsel, the county clerk made his ultimate determination that the plaintiff was not qualified and removed his name from the ballot on August 20, 1974. That action precipitated this litigation.
At the time of the hearing Lawrence Feroli, president of the Alpine Republican Club, was permitted to intervene as an individual and taxpayer in support of the position taken by defendant county clerk. Feroli appeared and argued through counsel before this court.
Defendants argue that N.J.S.A. 19:13-8, 19:49-5 and 19:13-20[1] preclude plaintiff from appearing on the November ballot.
*270 It is first argued that plaintiff, having signed an "acceptance" for the Republican nomination, is barred from running as a Democrat, since he would, of necessity, have to sign a second acceptance in violation of N.J.S.A. 19:13-8. The statute is inapplicable since plaintiff is not a petitioner by direct petition of nomination.
Next, it is argued that the Democratic Committee could not fill the "vacancy" with an unsuccessful Republican candidate, based upon N.J.S.A. 19:13-20. This statute is also inapplicable, since there never existed a vacancy as described in the statute. Since there was no Democratic nominee for mayor on the Democratic ballot and since the plaintiff received the largest number of write-in votes, plaintiff was properly nominated. Therefore, no vacancy in the Democratic mayoral nomination occurred which might require the application of the cited statute.
Finally, it is argued that N.J.S.A. 19:49-5 precludes plaintiff from running as a Democratic candidate nominated by "irregular ballots" (write-in votes) because his name is printed on the ballot as a candidate for the Republican nomination. The statute provides that any irregular ballots cast for a candidate whose name appears on the ballot shall not be counted.
Logic dictates to the contrary. In the primary election in question a Democratic voter in the booth was faced with only the Democratic ballot. The Republican lines were "locked out." To that Democratic voter plaintiff's name did not appear on the ballot. His only opportunity to vote for the plaintiff was by a write-in vote, and four such Democratic voters availed themselves of that opportunity. The question is whether this court should interpret the statute to disenfranchise those four voters by determining that N.J. *271 S.A. 19:49-5 precludes plaintiff's success in this litigation. I think not.
None of the statutes discussed herein cover the instant situation. The law cited by defendants is inapposite. Either the cases rely upon inapplicable statutes, or the facts are not comparable.
Only two cases cited by defendant need be distinguished. In Sadloch v. Allan, 25 N.J. 118 (1957), a defeated primary candidate sought by direct petition of nomination to replace an independent who was nominated by petition and was now withdrawing. The court held that N.J.S.A. 19:13-8 and N.J.S.A. 19:23-15 require a candidate to make a choice as to the method through which he will seek a nomination and a place on the ballot. He may proceed by direct petition of nomination as an independent, or he may seek nomination by affiliation with a political party in a primary election. The two methods are mutually exclusive, and a candidate who chooses to seek nomination in a primary election is precluded from a subsequent attempt at nomination by direct petition. 25 N.J. at 123.
Both N.J.S.A. 19:13-8 and Sadloch are inapplicable to the present case. N.J.S.A. 19:13-8 begins, "A candidate nominated for an office in a petition * * *" (emphasis added)
Plaintiff herein neither sought nor received the nomination of either the Democratic or Republican parties under the provisions of Title 19, Art. 2, c. 13 (a subsection of which is N.J.S.A. 19:13-8). At no time did he seek nomination for the office of mayor by direct petition. His unsuccessful attempt to receive the Republican nomination was conducted under the provisions of N.J.S.A. 19:23-5 et seq., dealing with political party primary elections. His successful attainment of the Democratic nomination came as a result of write-in votes in the Democratic primary, and since his name did not appear on the Democratic ballot the restrictions of N.J.S.A. 19:23-5 et seq., dealing with the filing of petitions for a position on a political party primary ballot, are equally inapplicable. Plaintiff received the Democratic nomination *272 through unsolicited write-in votes (unsolicited in the formal statutory sense envisioned by N.J.S.A. 19:23-5). The requirements and restrictions concerning the filing of petitions for a ballot position in a political party primary cannot and should not be applied to a write-in nominee who, by his very nature, did not seek a formal place on the primary ballot.
Defendant also relies upon Stevenson v. Gilfert, 13 N.J. 496 (1953). Stevenson upheld N.J.S.A. 19:13-20 as a valid exercise of legislative control over primary elections. The court found a definite legislative interest in insuring that a candidate, chosen under this statute to fill a vacancy in a party nomination subsequent to the primary, must be a qualified member of that political party. The court invalidated an attempt by the Hudson County Republican Committee to fill vacancies in the Republican ticket, created by the resignation of the Republican nominees, with Democratic candidates.
Clearly, the evils envisioned in Sadloch and Stevenson have no bearing upon the present case. Thus, any reliance on these cases is misplaced. This statutory conflict and the resulting dangers envisioned by the court in those cases are not here present. Plaintiff's victory in the Democratic primary by write-in votes is neither comparable to an independent nomination by direct petition nor in conflict with his formal, unsuccessful campaign for the Republican nomination. To rule otherwise would serve only to disenfranchise the validly cast votes by the write-in voters in the Democratic primary.
Our courts have been consistent in their determination that the effect of validly cast write-in votes must remain unrestricted by the technical restraints of the election laws. Sadloch, supra 25 N.J. at 128.
Similarly, Stevenson dealt with the statutory scheme which applies to a candidate's formal appearance on a primary ballot and a subsequent attempt to fill a vacancy in that ballot. Inherent in those cases is the determination that the right of voters to choose whom they please is guaranteed by *273 the unfettered existence of write-in votes. See Stevenson, supra, 13 N.J. at 503.
The final and most difficult problem presented is not reflected in the briefs, arguments or pleadings before the court. It involves the philosophy of the election laws and the public policy of the State.
The court has determined that the statutes per se do not prohibit plaintiff from running as the Democratic mayoralty candidate in Alpine in the general election. The court must now pass on the question as to whether the public policy of this State dictates that prohibition. Some jurisdictions reveal a liberal approach, others a more conservative one.
It is argued that an overall view of our statutes dictates a public policy under which one could never be a candidate for both parties and under which one party could not, even by write-in votes, adopt as its candidate one listed as a primary candidate for the other party (winner or loser); that such "liberality" is a threat to the two-party system and is contrary to the "public policy" of the State as espoused by Title 19.
Defendants in this case insist that the will of the Democratic voters "be treated as a nullity." They point to no relevant statutory prohibition but argue, as was done in the case of In re Keogh-Dwyer, 106 N.J. Super. 567 (Law Div. 1969), aff'd 54 N.J. 523 (1959), that "as a matter of rationality" such a result is the one intended by the Legislature. In that case, as in this:
The argument is not without at least superficial persuasiveness. But while reason may be a comely handmaiden of intelligent legislation, other considerations may not properly be ignored. [106 N.J. Super. at 573]
The court chooses to believe that when the Legislature enacted specific sections of the statute, which in certain instances prohibit an office seeker in one party's primary from being listed as a candidate for the same office as the nominee of the other party, it did not intend to legislate a general *274 prohibition of the scope here sought. The Democratic Committee of Alpine and the four registered Democratic voters who cast their votes for plaintiff must have their rights preserved. As registered Democrats those rights include the right to vote for plaintiff and the right to clothe him with the political designation over which they have dominion.
In re Keogh-Dwyer, supra, held that if a candidate for a primary nomination dies before the primary election but after the date set for the removal of his name from the primary ballot, and such candidate wins the primary election, the nomination is not a nullity; instead, a vacancy is created in the nomination. While the factual situation is different, the reasoning and logic expressed in the trial court's opinion are here relevant.
The Legislature has chosen to deal, in a separate article, with circumstances which shall cause the results of an election to be null and void. N.J.S.A. 19:3-7 et seq. It has immediately thereafter declared the effect and sanctions in such event. N.J.S.A. 19:3-10 et seq. Having thus considered, memorialized and penalized certain conditions throught [sic] to be sufficiently culpable to warrant a declaration of nullity, the Legislature has, in our view, expressed an intent thus to limit those occurrences sufficient to nullify an election. While we recognize that such an invocation of the maxim expressio unius est exclusio alterius is, "[A]t best * * * only an aid towards construction, always to be used with `great caution'. Gangemi v. Berry, 25 N.J. 1, 11 (1957), Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 471 (App. Div. 1962), affirmed 39 N.J. 355 (1963), we believe its aid here, not to reach an end or achieve a result but to ascertain intent, is entirely appropriate. Support in this direction is to be found from an examination of N.J.S.A. 19:3-9, where even conduct forbidden under certain circumstances is to be forgiven under others. It is apparent that the Legislature recognized the harsh result in the voiding of an election and intended it to eventuate only in the case of an `offense' proscribed and not justified." [106 N.J. Super. at 573; emphasis provided]
The court finds in this reasoning a practical and cogent directive to the solution of the current problem of statutory interpretation. The election laws, particularly in their application to primaries, should be construed liberally and in pari materia. Pritel v. Burris, 94 N.J. Super. 485, 490 (App. Div. 1967).
*275 The opportunity of voters to express their choice at a primary election should not be diminished by too narrow a reading of Chapter 23 of Title 19. Our highest court has clearly expressed itself in this area, holding that election laws are to be construed liberally so as to effectuate their purpose; they should not be construed so as to deprive voters of their franchise. Wene v. Meyner, 13 N.J. 185, 197 (1953). [In re Chirico, 87 N.J. Super. 587, 593 (App. Div. 1965), cert. den. 45 N.J. 32 (1965)]
Additionally, there is the direction of Kilmurray v. Gilfert, 10 N.J. 435 (1952), which held that election laws must be liberally construed to avoid disenfranchisement and to avoid the nullification of an election for technical reasons. Here the court concluded (at 440-441) that "It is in the public interest and the general intent of the election laws to preserve the two-party system and to submit to the electorate a ballot bearing the names of candidates of both major political parties." See also, In re Atlantic County Board of Elections, 117 N.J. Super. 244 (App. Div. 1971); Cavanaugh v. Morris County Dem. Comm., 121 N.J. Super. 430 (Ch. Div. 1972); Application of Cucci, 92 N.J. Super. 223 (Law Div. 1966).
The court therefore concludes that without an explicit statutory prohibition a proper interpretation of the election laws must lead to the conclusion that plaintiff is, and was from the date of the primary election, the Democratic nominee for mayor in Alpine and that his name will appear as such on the November ballot.
Judgment accordingly.
NOTES
[1] 19:13-8. Acceptance of nomination; annexation of oath of allegiance

A candidate nominated for an office in a petition shall manifest his acceptance of such nomination by a written acceptance thereof * * *. No candidate so named shall sign such acceptance if he has signed an acceptance for the primary nomination or any other petition of nomination under this chapter for such office.
19:13-20. Vacancies among primary election nominees; procedure for filing
In the event of a vacancy, howsoever caused, among candidates nominated at primaries * * * e. A statement filed pursuant to subsection d. of this section shall state * * * that (the candidate) has not voted in a primary election of any other political party in the last two primary elections * * *.
19:49-5. Irregular ballots
Ballots voted for any person whose name does not appear on the machine as a nominated candidate for office are herein referred to as irregular ballots. * * * No irregular ballot shall be voted for any person for any office whose name appears on the machine as a nominated candidate for that office; any irregular ballot so voted shall not be counted.