Nyla **MURPHY**, Jacqueline Muller, Daryl Raymond, Teri Carroll, and Kristin Smith, Appellants (Plaintiffs),

v.

**STATE CANVASSING BOARD** and Secretary of State, Appellees (Defendants).

No. 00–252.

Supreme Court of Wyoming.

Oct. 13, 2000.

Representing Appellant: Tim Newcomb of Grant & Newcomb, Laramie, WY.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; and Rowena L. Heckert, Deputy Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

The certified questions presented by this case raise the issue of whether a person who was defeated in a primary election as a candidate of one party, but who simultaneously received sufficient write-in votes in the separate primary election of the other party, has the right to appear on the general election ballot. We conclude that since the Wyoming Election Code of 1973 does not specifically prohibit such a result, the State Canvassing Board should have certified the person as a candidate.

## CERTIFIED QUESTIONS

On September 19, 2000, we agreed to answer the following certified questions:

1. Is a partisan candidate who was unsuccessful in the primary election entitled to a certificate of nomination when she has received the requisite number of write-in votes for the same office in the opposing party's primary?

2. Are partisan electors entitled to have the name of their unopposed write-in winner placed on the ballot when she was unsuccessful in the opposing party's primary but received the requisite number of votes in their party's primary?

Given the need for a determination by October 16, 2000, of whether Murphy's name should appear on the general election ballot so that the Albany County Clerk can print it, we have expedited this matter.

## STANDARD OF REVIEW

When we interpret the meaning of statutory provisions:

[W]e look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994), citing *Parker Land & Cattle Co. v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo.1993). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* ... Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id* .

. . . .

When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Tietema v. State*, 926 P.2d 952, 954 (Wyo.1996); *Butts v. State Board of Architects*, 911 P.2d 1062, 1065 (Wyo.1996). Instead, our inquiry revolves around the ordinary and obvious meaning of the words employed according to their arrangement and connection. In doing so, we view the statute as a whole in order to ascertain its intent and general purpose and also the meaning of each part. "We give effect to every word, clause and sentence and construe all components of a statute *in pari materia.*" *Parker*, 845 P.2d at 1042.

*Campbell County School District v. Catchpole*, 6 P.3D 1275, 1284 (Wyo.2000).

## BACKGROUND

The parties have stipulated to the following facts:

Nyla Murphy sought the Republican Party nomination for Senate District 10 during the primary on August 22, 2000. She was a registered Republican when she filed for nomination and continued to be a registered Republican until after the primary election.

Ms. Murphy did not win that nomination. However, in that primary, Ms. Murphy received more than the twenty-five (25) write-in votes required for nomination and received the largest number of votes for nomination in the Democratic Party primary for Senate District 10.

Plaintiffs Jacqueline Muller, Daryl Raymond, Teri Carroll and Kristin Smith attest they were among those registered Democrats who wrote in Nyla Murphy's name to be the Democratic Party candidate for Senate District 10 in the general election.

Following the primary election, Ms. Murphy changed her party affiliation to the Democratic Party and tendered to the Secretary of State a completed application for the office of State Senator and a check for the appropriate filing fee.

On August 30, 2000, the Defendants, Governor Geringer, Secretary of State Meyer, State Auditor Maxfield, and State Treasurer Lummis, as the State Canvassing Board, met to certify the official state canvas identifying the candidates for the general election in November, 2000.

On August 30, 2000, while in possession of a letter of advice from the Office of the Attorney General that concluded a partisan candidate who was unsuccessful in the primary election is not entitled to a certificate of nomination even though she has received the requisite number of write-in votes for the same office in the opposing party's primary, the State Canvassing Board declined to certify Ms. Murphy as the Democratic candidate for Senate District 10 in the general election in November 2000.

Nyla Murphy (Murphy) and the individual electors named above filed a complaint in the district court for declaratory judgment and injunctive relief challenging the State Canvassing Board's (the Board) decision not to certify her as the Democratic candidate for State Senate District 10 in the November 2000 general election.

In response to a joint motion by Murphy and the Board, the district court agreed to certify two questions to this Court while retaining jurisdiction to rule on Murphy's

motion for injunctive relief. On September 14, 2000, the district court issued a preliminary injunction preventing the Board from enforcing its decision.

## DISCUSSION

■ The United States Supreme Court has long recognized that the right to vote is a fundamental one. *Harper v. Virginia State Board of Elections,* 383 U.S. 663, 667–68, 86 S.Ct. 1079, 1081–82, 16 L.Ed.2d 169 (1966). The Court has, however, consistently allowed the states to impose reasonable restrictions on that right. *Munro v. Socialist Workers Party,* 479 U.S. 189, 193–95, 107 S.Ct. 533, 536–37, 93 L.Ed.2d 499 (1986). Wyoming has long interpreted statutes that confer or extend the elective franchise liberally. *Rasmussen v. Baker,* 7 Wyo. 117, 50 P. 819, 821 (1897). Indeed, we have recognized that the "right to vote is a fundamental right entitled to the strict protection of the courts." *Brimmer v. Thomson,* 521 P.2d 574, 578 (Wyo. 1974). The flip side of the right to vote is the right to run for office. This Court has noted that the citizens of this state "certainly have a genuine and existing right to ... seek election for public office for which they have proper qualifications." *Brimmer,* 521 P.2d at 578.

Within this context, the election laws provide four ways by which a person's name may appear on the general election ballot as a candidate for a partisan office: by convention, nomination by petition, nomination by primary election, and by write-in. In this case, we are only concerned with the latter two methods. To secure nomination for a partisan office through a primary election, a person must be a registered member of the party from which nomination is sought and must file an application with the secretary of state and pay the appropriate fees. Wyo. Stat.Ann. §§ 22–5–204, –206 and 208 (LEXIS 1999).

Wyoming's primary system is a closed one. In order to vote at a primary, electors must declare their party affiliation or sign an application to change their party affiliation to the one in whose primary they wish to vote before they can secure a ballot. Wyo.Stat. Ann. § 22–5–212 (LEXIS 1999). Electors may vote only in the primary for which they have declared an affiliation. *Id.*

In contrast, to secure a nomination as a write-in candidate, a person's name must not otherwise appear on the official ballot as a candidate for the office for which his or her name is written in by the voter, and that person must receive at least twenty-five write-in votes in order to appear on the general election ballot. Wyo.Stat.Ann. §§ 22–1–102(a)(xxxv); 22–5–215 (LEXIS 1999).

In this case, Murphy registered as a Republican Party candidate and sought the Senate District 10 seat through the primary election. She was unsuccessful in that endeavor. However, she did receive the requisite number of write-in votes in the separate Democratic primary for the same elective office. As the Board acknowledges, there is nothing in the statutes prohibiting this result. For instance, a write-in vote is valid only if it is cast "for a person whose name does not otherwise appear on the official ballot as a candidate for the office for which his name is written by the voter." Wyo.Stat. Ann. § 22–1–102(a)(xxxv). It is undisputed that Murphy's name did not appear on the official Democratic primary ballot. The statutes do prohibit a person from *seeking* the nomination for a partisan office unless he or she is registered in the party from which nomination is sought. Wyo.Stat.Ann. § 22–5–204(b). The term "seek" is not defined. However, in its ordinary sense, "seek" means to "go in search of" or "to try to acquire or gain." *Merriam–Webster's Collegiate Dictionary* 1057 (10th ed.1998). Murphy did not seek the Democratic nomination for the Senate District 10 in the ordinary sense of the meaning; she sought the Republican nomination. Accordingly, Murphy has met all of the technical requirements set forth in the statutes to otherwise qualify for certification as a write-in candidate.

In the absence of specific, prohibitive statutory language, the Board contends that its decision to deny certification to Murphy is justified on the grounds of legislative intent. Pointing to the closed primary system, the Board argues that the legislature intended to

limit general election candidates to the winners of the primaries. The Board adds that the electoral statutes strongly imply that a party nominee must be a party member no later than the primary election date. Furthermore, the Board contends that the statutes also imply that a person cannot be a qualified candidate in both party primaries simultaneously. The net effect, according to the Board, is that Murphy was not a qualified Democratic Party candidate at the time of the primary election and should not be certified as that party's candidate in the general election.

The Superior Court of New Jersey has addressed this issue in an almost identical factual context. *Riecker v. Hartmann,* 130 N.J.Super. 266, 326 A.2d 101 (1974). In that case, Riecker was an unsuccessful Republican mayoral candidate. 326 A.2d at 102. There was no candidate on the Democratic ballot, and Riecker received sufficient write-in votes in that primary to win the Democratic nomination. *Id.* Reicker complied with all of the technical requirements of the New Jersey election code to otherwise qualify as a write-in candidate. New Jersey's primary system was a closed one, very similar to Wyoming's. *Id.* at 102–03. The defendant county clerk made similar arguments regarding the intent of the legislature in creating a primary system as put forth by the Board in this case. *Id.* at 105. In reply to that argument the Superior Court stated:

> It is argued that an overall view of our statutes dictates a public policy under which one could Never be a candidate for both parties and under which one party could not, even by write-in votes, adopt as its candidate one listed as a primary candidate for the other party (winner or loser); that such 'liberality' is a threat to the two-party system and is contrary to the 'public policy' of the State as espoused by [the New Jersey election laws.]

> Defendants in this case insist that the will of the Democratic voters 'be treated as a nullity.' They point to no relevant statutory prohibition but argue, as was done in the case of *In re Keogh–Dwyer,* 106 N.J.Super. 567, 256 A.2d 314 (Law Div. 1969), *aff'd* 54 N.J. 523, 257 A.2d 697

(1969), that 'as a matter of rationality' such a result is the one intended by the Legislature. In that case, as in this:

> The argument is not without at least superficial persuasiveness. But while reason may be a comely handmaiden of intelligent legislation, other considerations may not properly be ignored. (106 N.J.Super. at 573, 256 A.2d at 317).

The court chooses to believe that when the Legislature enacted specific sections of the statute, which in certain instances prohibit an office seeker in one party's primary from being listed as a candidate for the same office as the nominee of the other party, it did not intend to legislate a general prohibition of the scope here sought. The Democratic Committee of Alpine and the four registered Democratic voters who cast their votes for plaintiff must have their rights preserved. As registered Democrats those rights include the right to vote for plaintiff and the right to clothe him with the political designation over which they have dominion.

. . . .

The court finds in this reasoning a practical and cogent directive to the solution of the current problem of statutory interpretation. The election laws, particularly in their application to primaries, should be construed liberally and *in pari materia. Pritel v. Burris,* 94 N.J.Super. 485, 490, 229 A.2d 257 (App.Div.1967).

> The opportunity of voters to express their choice at a primary election should not be diminished by too narrow a reading of [the New Jersey election laws]. Our highest court has clearly expressed itself in this area, holding that election laws are to be construed liberally so as to effectuate their purpose; they should not be construed so as to deprive voters of their franchise. *Wene v. Meyner,* 13 N.J. 185, 197, 98 A.2d 573 (1953) (other citations omitted).

*Id.* at 105–06. *See also In Re Gray Sadler,* 164 N.J. 468, 753 A.2d 1101, 1106 (N.J.2000).

We find the reasoning of the New Jersey court compelling since it is in harmony with what this Court has stated in the past:

[T]he basic and universally accepted rule that statutory and constitutional provisions which tend to limit the candidacy of any person for public office or exclude any citizen from participation in the elective process must be construed in favor of the right of the voters to exercise their choice and should be construed strictly *and not extended to cases not clearly covered thereby.*

*Brimmer,* 521 P.2d at 580 (emphasis added). Thus, while the Board's argument does have a certain appeal to it, any potential mischief that the legislature may wish to prevent is easily curable through clear, unambiguous legislation. Without a clear indication of the legislature's intent, we will not interpret the election laws so as to disenfranchise the electors who chose to exercise their votes for Murphy.

## CONCLUSION

There is no language in Wyoming's electoral laws prohibiting a person who loses the primary nomination of one party from being selected as the nominee of the other party through write-in votes. Therefore, we answer the first certified question from the district court, "Yes." The second certified question is essentially the same as the first, simply advancing a parallel interest of the electorate, and must also be answered in the affirmative.

The certified questions are answered in the affirmative, and this matter is remanded to the district court for further proceedings consistent therewith.