22 N.J. Super. 367 (1952)
92 A.2d 103
ANTHONY FISCELLA, PLAINTIFF-RESPONDENT,
v.
HENRY G. NULTON, COUNTY CLERK OF UNION COUNTY, DEFENDANT, AND FREDERICK A. CARMODY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1952.
Decided October 16, 1952.
*371 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Marcus I. Blum argued the cause for the plaintiff-respondent.
Mr. Richard V. Stein argued the cause for the defendant-appellant (Mr. John B. Stone, Jr., on the brief; Messrs. Stein, Stein and Hughes, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant, Frederick A. Carmody, appeals from a summary judgment entered by the Law Division, Union County, restraining the county clerk from printing the name of Frederick A. Carmody as a Republican candidate for the office of councilman of the second ward of the City of Rahway, on the sample ballots and official ballots for the general election to be held November 4, 1952, and denying the application of the defendant Carmody to dismiss the complaint on the grounds of laches and that it is both frivolous and insufficient in law.
The parties have stipulated the facts which, succinctly stated, are: No candidate of the Republican party filed a petition for nomination for the office in question at the primary election held on April 15, 1952. The only person to receive any "write-in" votes was the defendant Frederick A. Carmody, 125 votes being cast for him. Candidates for other offices on the Republican ticket were nominated. Carmody failed to file his certificate of acceptance within the statutory period of seven days and having been filed out of time, the county clerk notified him that his name would not appear as a candidate. On April 30, 1952 a certificate of selection signed by the members of the Republican County Committee, representing the City of Rahway and the second ward thereof, was filed with the County Clerk of Union *372 County, designating Frederick A. Carmody as the Republican candidate to fill the vacancy for the office in question. Thereafter, in due course, the name of Carmody appeared on the sample ballot for the general election as the regularly nominated councilmanic candidate. Subsequently, on or about October 12, 1952, the plaintiff Anthony Fiscella filed a complaint in lieu of prerogative writ in the Superior Court, Law Division, asserting that Carmody's nomination by the county committee members was invalid and seeking an order restraining the county clerk and as clerk of elections of Union County, from printing Carmody's name on the sample ballot and the official general election ballot. Thereafter an application was made by the defendants to dismiss the complaint on the grounds that it was frivolous and insufficient in law and laches. The court denied this application. Immediately thereafter the court heard and granted the application of the plaintiff for a summary judgment.
The system of elections in the United States is not of common law origin. Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 1009, 44 L.Ed. 1187 (1900). The subject is entirely statutory and the exercise of the right of suffrage is in all states regulated by constitutional and statutory provisions. Sharrock v. Keansburg, 15 N.J. Super. 11, 16 (App. Div. 1951). In considering the legislative intendment, the statutory words are to be given their common usage. Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, 503 (1950). And, if the legislative intendment is clear and unambiguous, the court will not "* * * indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed." Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951). "A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided. 2 Sutherland, Statutory Construction (3d ed.), sec. 4705, p. 339." Hoffman v. Hock, 8 N.J. 397, 406, 407 (1952). In the construction of a statute, it must be so construed as a whole with reference to the system of which *373 it is a part. Conflicting provisions ought to be reconciled in accord with the general intent. Maritime Petroleum Corp. v. City of Jersey City, 1 N.J. 287, 298 (1949).
The question presented here is whether the "write-in" votes of 125 electors received by Carmody constituted a "nomination" under the provisions of the Elections Law, in view of the fact that he did not file a certificate of acceptance within the prescribed period of time and, whether under such circumstances, a vacancy was created whereby the local members of the county committee were warranted in nominating a candidate to fill the vacancy under the provisions of R.S. 19:13-18 and R.S. 19:13-20, as amended.
The defendant-appellant contends that under the circumstances there was, in fact, a valid nomination; that a vacancy resulted from Carmody's failure to timely file his acceptance and the authority of the local committee members to fill the vacancy was thereby brought into play by the provisions of R.S. 19:13-20.
The plaintiff contends that the act of designating a candidate by write-in votes at the primary election by the electorate is a designation or choice merely equivalent to an inchoate nomination for candidate or nominee; that before a person is entitled to be a nominee or candidate as representative of a party, such person must, as a condition precedent, file his acceptance within the statutory period of seven days; that under the provisions of R.S. 19:3-7, Carmody's nomination was null and void and consequently, there was no nominee or vacancy.
We think it may be helpful to quote the pertinent provisions of the Elections Law around which this controversy revolves. Reference to other provisions of the statute that the parties contend have an important bearing on the issue will be made as we proceed with our discussion.
R.S. 19:15-28:
"Nothing in this Title shall prevent any voter from writing or pasting under the proper title of office in the column designated personal choice the name or names of any person or persons for *374 whom he desires to vote whose name or names are not printed upon the ballot for the same office or offices, and who shall mark a cross x, plus + or check &check; in the square at the left of such name or names. Such writing shall be in black ink or black lead pencil. All pasters shall be printed with black ink on white paper." As amended L. 1947, c. 104, p. 523, sec. 5.
R.S. 19:23-16:
"Any person nominated at the primary by having his name written or pasted upon the primary ballot shall file a certificate stating that he is qualified for the office for which he has been nominated, that he is a resident of and a legal voter in the jurisdiction of the office for which the nomination is made and that he consents to stand as a candidate at the ensuing general election to which shall be annexed the oath of allegiance prescribed in section 41:1-1 of the Revised Statutes duly taken and subscribed by the person so nominated before an officer authorized to take oaths in this State. Such acceptance shall be filed within seven days after the holding of the primary with the county clerk in the case of county and municipal offices and with the Secretary of State for all other offices." As amended L. 1949, c. 24, p. 79, sec. 11.
R.S. 19:13-18:
"When a person so declines his nomination, or if a petition or certificate of nomination, or if any nomination, be insufficient or inoperative, or if a nominee shall die, or for any reason vacate his nomination, the vacancy so occasioned may be filled in the manner outlined in the succeeding sections."
R.S. 19:13-20:
"In the event of a vacancy, howsoever caused, among candidates nominated at primaries, which vacancy shall occur not later than thirty-seven days before the general election, or in the event of inability to select a candidate because of a tie vote at such primary, a candidate shall be selected in the following manner: * * * in case of an office to be filled by the voters of less than a county (excepting in the case of a congressional district), such vacancy shall be filled by the members of the county committee representing the territory affected by the vacancy; * * *."
R.S. 19:3-7:
"If any candidate for nomination for or election to any public office or party position, or his campaign manager, shall fail to file any statement or oath required by this Title to be filed, at the time, *375 place and in the manner required by this Title, and duly verified as herein required, or shall file any false statement, the nomination or election of such candidate, if nominated or elected at the primary or other election concerning which such statement shall have been filed, shall be null and void." As amended L. 1949, c. 24, p. 71, sec. 1. (Italics ours.)
A careful reading of the statute reveals that the Legislature, in employing the words "nominee," "nomination" and "vacancy," did not define them specifically nor is there any indication that they were to be given any unusual or different meaning, as used in one provision or another. Evidently, it was intended that they should be given their common usage. Ford Motor Co. v. N.J. Dept. of Labor and Industry, supra. The words "nominee," "nomination" and "vacancy" appearing in the Elections Act, used as they have now for so many years, possess no uncertain or unclear character, but their meaning is definite and commonly understood. But, for the purpose of determining the meaning of the words as ascertained by common usage, we quote from the following recognized authorities for their definitions: Webster's New International Dictionary (2d ed. unabridged) defines "nominate": "To name, or designate by name, for an office or place; to appoint; esp., to name as a candidate for an election, choice, or appointment; to propose for office." And, "nomination": "a. Act or right of designating by name for an office or duty; appointment. b. Designation or proposal of a person as a candidate for office." Black's Law Dictionary (4th ed.) defines "nominate": "to name, designate, or propose for election or appointment"; "nomination": as "The act of suggesting or proposing a person by name as a candidate for an office." And, "vacancy": "An unoccupied or unfilled post, position, or office. * * * An existing office, etc., without an incumbent." 18 Am. Jur., Elections, sec. 128, p. 261, states: "Vacancies in nominations may arise in a number of ways, such as by declination in proper form, failure to file the certificate of nomination in time, failure to file acceptance, and death of a candidate *376 prior to election." 29 C.J.S., Elections, sec. 1, p. 22, states that: "The word `nominate' means to select a candidate to be voted for for a public office."
At the outset, we must ascertain and determine whether the Legislature intended that a nomination was effectively accomplished when Carmody received 125 "write-in" votes. Our answer to that question is in the affirmative. An examination of the statute reveals that the Legislature provides two methods by which a nomination to public office at the primaries may be ultimately accomplished, to wit: R.S. 19:13-3 et seq. provide that a person's name may be printed on the ballot as a candidate for a given office by filing a petition in compliance with the provisions thereof. R.S. 19:15-28 provides that the voters may by "* * * writing or pasting under the proper title of office in the column designated personal choice the name or names of any person or persons for whom he desires to vote whose name or names are not printed upon the ballot for the same office or offices, * * *." It clearly appears from these provisions of the statute that the person receiving the highest number of votes at the election has been duly nominated, regardless of whether his name appeared on the ballot either by the filing of a petition under R.S. 19:13-3 et seq., or by "write-in" votes under R.S. 19:15-28. Merely because thereafter the person nominated may fail to file a certificate of acceptance does not and cannot militate against the accomplished fact that a duly qualified nomination has been made. We think this position is strengthened by the provisions of R.S. 19:13-16 et seq., of chapter 13, entitled Nomination of Candidates, wherein the term nomination is applied in dealing with a vacancy among candidates nominated in primaries, regardless of the manner by which the candidate became the successful nominee. 143 A.L.R. 1006, Filling Vacancy in Nomination, citing the case of State ex rel. Sayer v. Junkin, 87 Neb. 801, 128 N.W. 630 (Sup. Ct. 1910), states that where a person receives the highest number of votes at a primary election and providing that he must file an acceptance *377 within ten days, his failure to timely file such an acceptance creates a vacancy within the statute under which the committee is authorized to fill the vacancy.
We proceed now to the question as to whether Carmody's failure to file his certificate of acceptance created a vacancy. Plaintiff contends that a person is not entitled to be a nominee or candidate if he has failed to file his acceptance within the statutory period of seven days and, therefore, the nomination is null and void, "with the resultant effect, ab initio, that there was never a nominee under the facts of this case." In support of this contention the plaintiff argues that under the provisions of R.S. 19:3-7, defendant's failure to timely file his acceptance caused the nomination to be null and void. We do not concur in this viewpoint. It is our opinion that R.S. 19:3-7 has no applicability to the facts of this case. We are convinced that R.S. 19:23-16, as amended, and R.S. 19:3-7, are in pari materia; that they are not in conflict with or repugnant to each other; that each has a separate and independent legislative objective. Where it is apparent that the statutory provisions are all in pari materia the intention and sense of the law must be gathered from its object, the nature of the subject matter, and the whole of the context. Goff v. Hunt, 6 N.J. 600, 606 (1951). R.S. 19:23-16 deals merely with the certificate required to be filed by one nominated by "write-in" votes. R.S. 19:3-7 provides that where a candidate for nomination or election to any public office or party position, or his campaign manager, shall fail to file any statement or oath required to be filed at the time and place and manner required and duly verified, or shall file any false statement, such nomination or election "shall be null and void." The use of the words "candidate" or "campaign manager" indicates the nature of the required statement or oath referred to therein, to wit: R.S. 19:40-1, requiring the filing of certificate of appointment of campaign manager; R.S. 19:44-1, verified statement of campaign manager setting forth itemized statement of all contributions received and *378 expenditures by or on behalf of candidate, with the affidavit of the candidate attached, which statement and affidavit must be filed on the Friday or Saturday next preceding the election; R.S. 19:44-2, requiring that within twenty days after the election, the campaign manager to file a verified statement of the total amount expended, or liability incurred by or on behalf of such candidate, the statement to include "the total amount named in the statement of expenses filed prior to such election, as well as the total amount of expenses incurred subsequent to the date of filing such last named statement," and such statement shall be verified by the affidavit of the candidate; and R.S. 19:44-4 provides that all reports and statements required to be filed by the campaign manager shall be filed by the candidate if he acts as his own campaign manager. It is apparent, therefore, that R.S. 19:3-7 may be given effect without conflicting in any respect with R.S. 19:23-16. R.S. 19:13-20 clearly demonstrates the intendment of the Legislature to provide that a vacancy among candidates nominated at the primary election, regardless of the cause therefor, occurring not later than thirty-seven days before the general election, may be filled in the manner prescribed therein. This is evident also by the language of R.S. 19:13-18, stating that: "When a person so declines his nomination, or if a petition or certificate of nomination, or if any nomination, be insufficient or inoperative, or if a nominee shall die, or for any reason vacate his nomination, the vacancy so occasioned may be filled in the manner outlined in the succeeding sections." (Italics ours.) The method of filling a vacancy under R.S. 19:13-20 includes, we think, not only vacancies created by the candidate's declination, R.S. 19:13-16, or by death of the nominee, or the insufficiency or inoperativeness of the nomination, R.S. 19:13-18, but also a vacancy created where a nomination has been adjudged to be null and void under the provisions of R.S. 19:3-7. The Legislature obviously clearly intended to provide the stated means of filling a vacancy that might be caused by any reasonably anticipated eventuality.
*379 The plaintiff argues that the issue here has been determined in New Jersey in the case of Cleveland v. Woolley, 5 N.J. Super. 613 (Law Div. 1949). In the Cleveland case, the Democratic primary ballot contained no name for the office of township committee, for the Township of Ocean, Monmouth County. Harry R. Schlossbach received 35 "write-in" votes. Cleveland received none. Schlossbach failed to file an acceptance within seven days. Subsequently, a certificate of selection signed by the appropriate members of the Democratic executive committee certified the selection of Cleveland as the Democratic candidate. The filing of the certificate was refused on the ground no one had been nominated at the primary election and, therefore, no vacancy existed. Thereafter Cleveland instituted a proceeding to compel the county clerk to include his name on the ballot as the Democratic candidate. The court held:
"The plaintiff in the above cause did not file a petition prior to the primary election nor did he receive any votes at the primary election. Harry R. Schlossbach, having received thirty-five write-in votes, was entitled to become a candidate provided he filed his acceptance within the seven days after the primary as required by R.S. 19:23-16. There appears to have been no one in this case who has followed the statutory procedure to become a candidate and obtain the nomination. Therefore, there was no nominee and since there was no nominee or any person nominated at the primary, it follows that no vacancy could occur `among candidates nominated at primary.'"
It would appear that the trial judge, in reaching his determination, was influenced by the fact that Cleveland did not file a petition prior to the primary election nor did he receive any "write-in" votes and, as Schlossbach did not timely file his certificate of acceptance, there was no nominee and, therefore, no vacancy. We think that in the Cleveland case the court reached an erroneous conclusion. Under the circumstances here, which do not differ too materially from those in the Cleveland case, we are satisfied that there was a valid nomination effectuated when Carmody received 125 "write-in" votes; that a vacancy was created when he failed to *380 timely file his certificate of acceptance and the action of the members of the county committee was appropriate and valid when they selected Carmody as the candidate for the councilmanic position.
The plaintiff contends further that the county committee was prohibited from naming Carmody by virtue of the provisions of R.S. 19:3-20, which provide:
"A candidate nominated for or elected to an office, whose nomination or election has been annulled and set aside for any reason mentioned in this title, shall not, during the period fixed by law as the term of such office, be appointed to fill any vacancy which may occur in such office; but this provision shall not apply to appointments to any office the qualifications for which are prescribed by the constitution of this state or of the United States." (Italics ours.)
This provision does not have the effect attributed to it by the plaintiff. It is not seriously disputed that Carmody's nomination was not annulled by any judicial action, at least, not prior to the present litigation. Additionally, the prohibition in question is only effective in the event that the office of the incumbent is vacated during the term thereof, in which event one whose prior nomination or election to that office has been annulled may not be appointed to fill the vacancy during the term thereof. The plaintiff argues that the original action of the county clerk in refusing to file Carmody's certificate of acceptance out of time is tantamount to an adjudication that his nomination was null and void. Such a contention is specious. The statute provides that such an annulment or voiding of a nomination must result from judicial action, as will appear from R.S. 19:3-10, i.e.:
"If it shall be determined in a manner hereinafter provided, that the nomination for an office of a successful candidate at any primary election is null and void, and if such determination shall have been made ten days before the election at which the candidates nominated at such primary election are to be voted for, an order shall be made by the court or judge making such determination prohibiting the printing of the name of such candidate on the ballot to be used at such election, and the name of the candidate for nomination or party position at such primary election receiving the next *381 highest number of votes shall thereupon be printed upon the ballot as the nominee for the office." (Italics ours.)
We reach the inescapable conclusion that the Law Division erred in entering the summary judgment in favor of the plaintiff and that a judgment should have been entered dismissing the complaint. Accordingly, the judgment is reversed and we direct that a judgment dismissing the complaint be entered.