698 A.2d 564

FRANK J. FULBROOK, PLAINTIFF, v. JAMES REYNOLDS, MUNICIPAL CLERK OF THE CITY OF CAMDEN, GWENDOLYN FAISON, ARNOLD W. WEBSTER, PH.D., DWAINE WILLIAMS, CHARLES A. ASHLEY, WILLIAM JENKINS, MILTON MILAN, AND ROBERT "SARGE" BOYER, DEFENDANTS.

Superior Court of New Jersey
Law Division
Camden County

Decided April 15, 1997.

126

*Lorraine A. DiCintio*, for plaintiff

*Dennis G. Kille*, for defendant James Reynolds (Acting City Attorney)

*William R. Bostic*, for defendants Faison, Webster, Williams and Ashley

HORNSTINE, J.S.C.

Plaintiff seeks declaratory judgement to render *N.J.S.A.* 40:45–10.1 inapplicable to a Mayor–Council form of government. Additionally, Plaintiff requests the removal of council candidate, Gwendolyn Faison, from the ballot in the upcoming municipal election in the City of Camden.

Plaintiff, Frank J. Fulbrook, is a resident and taxpayer of Camden and a candidate for the Office of Mayor in the May 13*th*, 1997 municipal election.

Defendant, James Reynolds, is named in his capacity as the Municipal Clerk for the City of Camden.

Defendants, Arnold W. Webster, Dwaine Williams and Charles A. Ashley are named in their capacity as members of the Committee on Vacancies for the slate of candidates proceeding under the slogan "Moving in the Right Direction".

Defendant, Gwendolyn Faison, is named in her capacity as a replacement candidate for the Office of Council–At–Large on the slate proceeding under the slogan "Moving in the Right Direction".

Defendants, William Jenkins, Milton Milan, and Robert Boyer, are named in their capacity as members of the Committee on Vacancies for the slate of candidates proceeding under the slogan "A Better Camden".

### FACTS

The attorneys for plaintiff and defendants submit the matter to the court on the following uncontradicted facts.[1]

The City of Camden is governed under the mayor-council form of government as set forth in the Faulkner Act, *N.J.S.A.* 40:69A–1 through–30 and 40:69A–31 through–32. *See also* Governor's Re-

---

[1] Defendants, William Jenkins, Milton Milan and Robert Boyer, take no position as to the outcome of this litigation.

consideration and Recommendation Statement, Senate No. 1206–L.1985, c. 374. Under the "mayor-council plan" the Municipal Clerk is appointed by the council and performs "... such functions as may be required by law". *See N.J.S.A.* 40:69A–38.

The next municipal election is scheduled for May 13, 1997. Cognizance must be given to *N.J.S.A.* 40:45–8, 40:45–9, and 40:45–13 which set forth the statutory requirements for candidacy:

    a. the potential candidate must file a petition of nomination with the Municipal Clerk of the City of Camden no later than fifty-four (54) days prior to the date of the municipal election;

    b. the petition of nomination submitted by the potential candidate must be supported by individual certificates of at least one per cent (1%) of the registered voters of the municipality but not less than twenty-five (25);

    c. the potential candidate must also file an oath regarding the petition statement;

    d. the Municipal Clerk must examine the said petition for conformity with the Uniform Nonpartisan Elections Law, (*N.J.S.A.* 40:45–5 *et seq.*) and the general election laws; and

    e. no later than forty-four (44) days prior to the election date, the Municipal Clerk must publish the names of the persons qualifying as candidates.

On March 20, 1997, plaintiff Frank J. Fulbrook, submitted his petition of nomination for the Office of Mayor. The petition was tendered to the Municipal Clerk, supported by the requisite individual certificates and met all applicable legal requirements. Upon review, the Municipal Clerk designated plaintiff as a qualified candidate.

On March 20, 1997, Terry A. Mason, Jr. submitted his petition of nomination for the Office of Council–At–Large. Shortly thereafter, the Municipal Clerk qualified his candidacy based upon a review of the submissions and applicable law.

On March 20, 1997, Arnold W. Webster filed his petition of nomination for the Office of Mayor. His petition was also reviewed and his candidacy was approved.

Likewise on March 20, 1997, James Matthews and John Gillian filed their respective petitions of nomination for the Office of City Council. Ultimately, their respective candidacies were accepted by the Municipal Clerk.

*N.J.S.A.* 40:45–10 provides in pertinent part that if several candidates shall petition that their names be grouped together and that one designation be printed opposite their names, the clerk shall group their names in a bracket, and opposite the bracket shall print the designation. To that end and within the time proscribed, Arnold Webster, Terry Mason, Jr., James Matthews and John Gillian petitioned the Municipal Clerk to group their names together with the designation, "Moving in the Right Direction".

On March 24, 1997, Terry Mason, Jr. withdrew as a candidate for council.

On March 24, 1997, the slate designated "Moving in the Right Direction" filed with the Municipal Clerk the names of Arnold Webster, Dwayne Williams, and Charles Ashley as their Committee on Vacancies.

On April 1, 1997, the Committee on Vacancies for "Moving in the Right Direction" notified the Municipal Clerk that it was designating Gwendolyn Faison as the replacement candidate for Terry Mason, Jr..

On April 1, 1997, at the meeting to draw ballot positions, the Municipal Clerk included Gwendolyn Faison as a candidate.

On April 10, 1997, plaintiff filed the complaint in lieu of prerogative writ seeking declaratory judgement holding *N.J.S.A.* 40:45–10.1 inapplicable in the Mayor–Council plan adopted by the City of Camden. Plaintiff further requests restraints against the Municipal Clerk from including the name of Gwendolyn Faison on the ballot as a candidate for council.

### Discussion

The City of Camden is a municipal government formed under the provisions of the Faulkner Act, *N.J.S.A.* 40:69A–1 through–30. This municipality has chosen to operate under the Mayor–Council

form of government as provided by *N.J.S.A.* 40:69A–31 through–32.

*N.J.S.A.* 40:45–8 states:

On or before the 54*th* day prior to a regular municipal election, the names of candidates for all elective offices shall be filed with the municipal clerk....

This matter was not brought to the court's attention until 33 days prior to the date of election and the decision to determine the issues *sub judice* was not rendered until 29 days prior to the election. The ballots have not been printed.

■ With these facts at hand, the court must first determine whether *N.J.S.A.* 40:45–10.1 applies to the Mayor–Council form of government or only to Commissioner plans. The Uniform Nonpartisan Election Laws address both the Mayor–Council plan (*N.J.S.A.* 40:45–5) and the Commission plan (*N.J.S.A.* 40:45–6).

Under *N.J.S.A.* 40:45–10.1 a committee on vacancies can be expressly created for the office of commissioner. A review of all other related statutes reveals no alternative procedures for qualifying candidates under the Mayor–Council plan.

The statute provides in pertinent part:

40:45–10.1 Committee on vacancies for office of commissioner; creation; powers; filing requirements.

When several candidates for the office of commissioner petition that their names be grouped together and that one designation named by them shall be printed opposite their names ... the candidates whose names are to be grouped in a bracket ... may file with the clerk of the municipality a designation, in writing, of the names of three persons as a committee on vacancies.

A committee on vacancies established pursuant to this act shall have the power if a vacancy arises ... of any of the candidates included in said group, to fill the vacancy by filing with the clerk of the municipality the name of the candidate in the place of the person whose death, resignation or other occurrence caused the vacancy.

Any such designation to fill a vacancy shall have the same force and effect as an original petition of nomination.

To be effective, any designation by the committee on vacancies must be filed with the clerk of the municipality not less than 10 days before the election is to be held.....

Nothing in this section shall prevent the filling of vacancies in any other manner authorized by Title 19 of the Revised Statutes, except that a candidate in a group

bracket, who joins in the designation of a committee on vacancies under the provisions of this act may not participate in any other method for filling a vacancy in his candidacy for commissioner.

Election statutes and those related thereto should be tested with a leaning toward liberality in view of public policy. However, the court can not avoid giving common usage when applicable. N.J.S.A. 1:1–1.

[*See also Safeway Trails v. Furman*, 41 *N.J.* 467, 197 *A.*2d 366 (1964).]

This rule of construction was reiterated more explicitly in *Fiscella v. Nulton*, 22 *N.J.Super.* 367, 372, 92 *A.*2d 103 (App.Div. 1952):

If the legislative intendment is clear and unambiguous, the court will not * * * indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed.

*See Cavanagh v. Morris County Dem. Committee*, 121 *N.J.Super.* 430, 297 *A.*2d 594 (Ch.Div.1972); *In re Keogh–Dwyer*, 106 *N.J.Super.* 567, 571, 256 *A.*2d 314 (Law Div.1969), *aff'd*, 54 *N.J.* 523, 257 *A.*2d 697 (1969); *Ford Motor Co. v. N.J.Dept. of Labor and Industry*, 5 *N.J.* 494, 76 *A.*2d 256 (1950).

The plain meaning of the statute appears clear and unambiguous. The legislators' intent to limit the committee on vacancies procedure to municipalities under the Commission plan is obvious when the 1991 amendment is considered in light of other provisions of the Uniform Nonpartisan Election Laws and in light of the legislative history of the 1991 amendments. The legislature knew how to expressly provide for similar election procedures in both Mayor–Council and Commission forms of government. For instance, the Legislature stated in pertinent part in *N.J.S.A.* 40:45–6:

This act shall govern all municipalities having adopted a plan or form of government or a charter, which provides for the election of municipal officers at regular municipal elections held on the second Tuesday in May, including municipalities holding regular municipal elections under the "Optional Municipal Charter Law," . . . under the "commission form of government law". . . .

The Legislature also knew well how to differentiate between various elective offices. Consider the 1995 amendment codified at *N.J.S.A.* 40:45–18, which states, in pertinent part:

40:45–18. Municipalities with run-off elections; election of councilman-at-large or village trustees with less than majority of votes

... [i]f the voters of any municipality shall adopt the proposition of holding run-off elections in the municipality ... at the regular municipal election held in that municipality the candidates receiving the greatest number and a majority of votes shall be elected to the respective offices, except that:

a. Nine councilmen-at-large (or *commissioners,* or village trustees) are to be elected and four or more candidates....

Additionally, the Senate County and Municipal Government Committee Statement regarding the Act further supports the proposition that the provision is strictly limited to candidates for the Office of Commissioner. This Statement reads, in pertinent part, "[t]he bill provides that, when several candidates for the office of *commissioner* petition that their names be grouped together under one designation, those candidates ... may file ... a designation, in writing, of the names of three persons as a committee on vacancies". (Emphasis added). *See also Brewer v. Porch,* 53 *N.J.* 167, 174, 249 *A.2d* 388 (1969) which held that legislative history may prove helpful in construing legislative intent.

These examples further demonstrate that in using the term "office of commissioner" in the 1991 amendment set forth in *N.J.S.A.* 40:45–10.1, the Legislature's intent was to limit the committee on vacancies procedure to candidates for the office of commissioner in a commission form of government.

■ *N.J.S.A.* 40:45–10.1 does not, however, prevent the filing of vacancies if authorized by "Title 19 of the Revised Statutes". Therefore, this court must look to these statutes governing elections to determine whether a viable alternative approach exists.

*N.J.S.A.* 19:13–19 concerns itself with the filling of vacancies in general elections.

If the candidate vacating the nomination was nominated directly by petition his successor shall be nominated in the same manner by direct petition, which new

petition of nomination must be filed with the Secretary of State or county clerk, as the case may require, not later than 54 days before the day of election whereat such candidate is to be voted for.

This legislative enactment appears to be designed to establish an orderly system and procedure in the electoral process. Certainly the intent of our election laws should not be so narrowly construed as to prevent, obstruct or discourage the right of persons qualified for public office from offering themselves as candidates and permitting the citizens to approve or reject their candidacy. *See Alston v. Mays*, 152 *N.J.Super.* 509, 517, 378 *A.*2d 72 (Law Div.1977). One of the goals of our election laws is to assure a quick selection of someone to fill the vacancy so that the public would have as much time as possible to evaluate that candidate between the time of selection and the date of the election.

Our Supreme Court in *Kilmurray v. Gilfert*, 10 *N.J.* 435, 91 *A.*2d 865 (1952) relaxed the time limitations for filing the petition for nomination under *N.J.S.A.* 19:13–19 based upon its liberal construction and public policy.

It would be rather simple for the court to disqualify Gwendolyn Faison as a candidate for council. But to do so, the voters in this election would be denied the opportunity to consider her candidacy in relation to the others. This decision would be against the public policy that affords voters the opportunity to make a choice. *Catania v. Haberle*, 123 *N.J.* 438, 588 *A.*2d 374 (1990). It would also be against the spirit of the election laws as well as against the spirit of a democratic system. *See In re 1992 Municipal Elections*, 257 *N.J.Super.* 368, 373, 608 *A.*2d 462 (Law Div.1992).

Since *Kilmurray v. Gilfert, supra,* our Supreme Court has stated that time limitation within the election legislation exists to afford the election officials time to prepare the technical niceties for the general election. With *Kilmurray* in mind, let us look at the realities of the situation. Ballots for the upcoming municipal election have not yet been printed. The Municipal Clerk has ample time to prepare the ballots and give notice to the local

newspapers. No one would be prejudiced if reasonable additional time were granted in which a new petition could be submitted.

*N.J.S.A.* 40:45–8 sets forth the time parameters to file the petition for nomination, i.e. on or before the 54*th* day prior to a regular municipal election. It is inconceivable to this court that the Legislature would have intended this provision to be construed as mandatory under the uncontroverted facts herein. This conclusion is further buttressed by previous case law analysis of *N.J.S.A.* 19:13–19.

This court's interpretation of election law and particularly *N.J.S.A.* 40:45–8 must be construed in a liberal manner; "liberal" in the sense of construing it to allow the greatest scope for public participation in the electoral process, to allow candidates to be placed on the ballot, and most importantly to allow the voters a choice on Election Day. *See Catania v. Haberle, supra,* at 448, 588 *A.*2d 374.

To that end and in accordance with statutory and case law, the court will grant candidate, Gwendolyn Faison three days to file to petition for nomination for the Office of Council–At–Large in compliance with *N.J.S.A.* 40:45–8 and 40:45–9, as interpreted by this decision.