704 A.2d 945

CATHERINE BARRETT, GEORGE BILLINGHAM, PAUL CANNON, ROBERT CLARK, DORIS E. COLBERT, DANIEL CONWAY, LOIS V. DOZIER, VELMA FOY, SR., JOSEPH J. GEORGE, JOHN H. GREEN, JAMES W. HASTINGS, VICTOR HOSTEN, ANDREW HOYT, CHARLES E. JAHN, HARRY L. JOHNSON, MARY T. MCCARTHY, VALENTINO H. MONTEPARO, ANNETTE F. PETROCELLI, ALBERTA POMEROY, ALEXANDER REVESZ, JR., BARBARA SEYMOUR, PAUL N. THOMPSON, JESSIE TURNER, ELLEN UELAND, KATHERINE VECCHIO, ZELDA ZARIN, ALAN ZOLKOWITZ, PLAINTIFFS–RESPONDENTS, v. MONMOUTH COUNTY BOARD OF ELECTIONS, COUNTY CLERK OF ELECTIONS, COMMISSIONER OF REGISTRATION AND SUPERINTENDENT OF ELECTIONS, DEFENDANTS–RESPONDENTS.

LOUISE MURRAY, PETITIONER–RESPONDENT, v. CLAIRE FRENCH, MONMOUTH COUNTY CLERK, MONMOUTH COUNTY BOARD OF ELECTIONS, KENNETH "BUTCH" SAUNDERS, JAMES CONDOS, AND SHEILA SOLOMON, JOHN HAMILTON, DEFENDANTS, AND ALBERT REINOSO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 6, 1997—Decided October 30, 1997.

Before Judges PETRELLA and WERTHEIMER.

*Schwartz Simon Edelstein Celso & Kessler,* attorneys for appellant Albert Reinoso (*Dwayne D. Warren* on the letter join in the brief and appendix submitted by respondent Monmouth County Board of Elections).

*Peter Verniero,* Attorney General, attorney for respondent Monmouth County Board of Elections (*Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Francine W. Kaplan,* Deputy Attorney General, on the brief).

No other parties submitted a brief.

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Albert Reinoso, a candidate for election to the City Council of the City of Asbury Park in the May 13, 1997 election, appeals from the determination by Judge Lehrer in the Law Division that twenty-seven absentee ballots were wrongly rejected by the Monmouth County Board of Elections (Board). Before the recount, Louise Murray had been in sixth place with 955 votes, fourteen less than Albert Reinoso. As a result of Judge Lehrer's determination and the recount, which included the twenty-seven absentee

ballots, Murray received the fifth highest number of votes, and was entitled to a seat on the city council.

Reinoso, in his appeal, relies on the brief filed by the respondent, which has neither appealed nor cross-appealed. However, the Board and Reinoso both take the position that the twenty-seven votes should be voided. The Board takes the position that Judge Lehrer erred in finding that the failure of an assistor to sign the separate certification on the inner envelope of the absentee voter package constituted a mere technical violation of *N.J.S.A.* 19:57–23.

The facts have been set forth at length in Judge Lehrer's July 16, 1997 opinion reported *sub nom. Barrett v. Monmouth County Board of Elections,* 307 *N.J.Super.* 403, 704 *A.*2d 1053 (Law Div.1997), and need not be detailed here.

Essentially, Judge Lehrer concluded, after a bench trial, that the disputed twenty-seven absentee ballots, all from voters who were residents of the same nursing home in Asbury Park, should be counted. The judge found no participation by anyone except the voter in marking the ballot, no fraud, and no violation of the secrecy of any of those absentee ballots. There was a technical violation of *N.J.S.A.* 19:57–23 regarding the requirement for the signature of "assistors" in connection with the writing of the return addresses on the inner and outer envelopes after the inner envelope had been sealed. However, the instructions on the absentee ballot regarding assistance are not as clear or as broad as the language of *N.J.S.A.* 19:57–23.[1] It is undisputed that the

---

[1] *N.J.S.A.* 19:57–23 provides in pertinent part:

* * * No absentee voter shall permit any person in any way, except as provided hereafter, to unseal, mark or inspect his ballot, interfere with the secrecy of his absentee ballot vote, complete or sign the certificate, or seal the inner or outer envelope, nor shall any person do so.

An absentee voter shall be entitled to assistance from a family member in performing any of the actions above. An incapacitated absentee voter shall also be entitled to assistance from a person other than a family member in performing any of such actions. The family member or other person

cited statute requires anybody who assists an absentee voter to sign as an assistor and undertake to "maintain the secrecy of the vote" in that ballot. The statute also contains express prohibitions, subject to the proviso "except as otherwise provided." However, the language of the certification on the absentee ballot envelope does not define "assistance." Nor does that language state that someone who only places return addresses on the inner and outer envelopes after the voter has placed his or her ballot in the inner envelope and sealed it should sign anything.[2] With such vague directions it is understandable why the assistors in this case failed to sign in the capacity of helping the voter. It is unlikely that a person who did not assist in actually marking the ballot would understand from the language on the ballot envelope that any assistance in filling out address portions of the envelopes required a signature. We would not expect such an assistor to have ready access to a copy of the statute. To hold that this type of assistance voids the vote begs the question. The intent and spirit of the statute would not seem to apply to such actions which had nothing to do with the accuracy or secrecy of the ballot.[3] Under the circumstances, we agree with Judge Lehrer's determination that the disputed twenty-seven absentee ballots were to be counted.

---

providing such assistance shall certify that he did assist the voter and will maintain the secrecy of the vote by both printing and signing his name in the space provided on the certificate. In no event may a candidate for election provide such assistance, nor may any person, at the time of providing such assistance, campaign or electioneer on behalf of any candidate.

[2] The "Certificate of Civilian Absentee Voter" states under the place for the signature or mark of the voter:

Any person providing assistance shall complete the following:
I do hereby certify that I am the person who provided assistance to this voter and declare that I will maintain the secrecy of this ballot.
This language follows the voter's certification that (s)he marked and sealed the ballot in secret, and provides permission for someone to assist the voter if (s)he is in need of help.

[3] Would it constitute assistance in the casting of a ballot if pre-printed return address labels were glued onto the envelopes by someone other than the voter?

We reject the Board's reliance on *In re Petition of Battle,* 190 *N.J.Super.* 232, 462 *A.*2d 1291 (App.Div.1983), *modified,* 96 *N.J.* 63, 473 *A.*2d 980 (1984). That case dealt with a different statute, *N.J.S.A.* 19:57–37.1, which requires that those who deliver absentee ballots sign the outer envelope. This requirement is imposed in order to protect the chain of custody, not the secrecy, of the ballot. In *Application of Langbaum,* 201 *N.J.Super.* 484, 493 *A.*2d 580 (App.Div.1985), we discussed the goals of the absentee voter statute and drew a distinction between the preservation of secrecy and the deterrence of fraud. In *Langbaum,* we considered that secrecy is more of a personal right of the voter than an element of electoral integrity. We held that voiding the ballot is too harsh of a remedy where only secrecy is implicated and no fraud has been shown. *Id.* at 490, 493 *A.*2d 580. In that case, we allowed the challenged absentee ballots to be counted. Similarly, in the case at bar, Judge Lehrer found no fraud and no violation of ballot secrecy.

We are satisfied that *N.J.S.A.* 19:57–23 and *N.J.S.A.* 19:57–37.1 are not analogous and that a technical violation of the absentee ballot provision which does not affect voter secrecy or constitute fraud will not invalidate the absentee ballot. *See In re Petition of Kriso,* 276 *N.J.Super.* 337, 344–346, 647 *A.*2d 1373 (App.Div.1994).

Accordingly, we affirm the decision of the Law Division substantially for the reasons expressed by Judge Lehrer in his written decision of July 16, 1997.