133 A.3d 694

CORA CHILDS, GENERAL MAJORITY POLITICAL ACTION COM-
MITTEE, PLAINTIFFS, v. EDWARD P. MCGETTIGAN, ATLAN-
TIC COUNTY CLERK, DEFENDANT. NEW JERSEY REPUBLI-
CAN STATE COMMITTEE, INTERVENOR.

Superior Court of New Jersey
Law Division Atlantic County

Decided October 26, 2015.

410

*Robert A. Stacchini* for plaintiffs (*Kent & McBride, PC,* attorneys), and *Marc E. Elias* and *Ezra W. Reese* (*Perkins Cole, LLP* ) of the District of Columbia bar, admitted pro hac vice.

*James T. Dugan,* Assistant Atlantic County Counsel, for defendant (*James F. Ferguson,* Atlantic County Counsel, attorney).

*Raymond J. Went, Jr.,* for intervenor (*Nehmad, Perillo & Davis, PC,* attorneys).

MENDEZ, A.J.S.C.

This matter comes before the court by way of a verified complaint in lieu of prerogative writ and an order to show cause with temporary restraints, filed on October 20, 2015, by plaintiffs, Cora Childs and General Majority Political Action Committee (hereinafter "plaintiffs"). The issue before the court is whether a party that pre-prints a registered voter's name and address on a vote by mail ballot application is an assistor under *N.J.S.A.* 19:63–6(a) and, if so, whether, under the circumstances of this case, the failure of that party in completing the assistor section of the vote by mail ballot application renders it invalid. For the reasons set forth herein, the court holds that, under the circumstances of this case, while there was a technical violation in General Majority Political Action Committee's (hereinafter "GMP") failure to complete the assistor section of the vote by mail ballot application, nonetheless, this technical violation does not render the applications distributed by GMP invalid. The court grants plaintiffs' petition for injunctive relief compelling the Clerk of Atlantic County (hereinafter "County Clerk") to accept all vote by mail ballot applications submitted by qualified registered voters and to not reject those applications for the sole reason that GMP did not complete the assistor section.

## STATUTORY SCHEME

In the State of New Jersey, any qualified registered voter shall be entitled to vote using a mail-in ballot in any election held in this State. *See N.J.S.A.* 19:63–3; *N.J.S.A.* 19:63–6. Previously, the Absentee Voter Act set forth under *N.J.S.A.* 19:57–1 to –40 set constraints on those persons who were entitled to vote by absentee ballot. This changed as of July 1, 2009, when the Absentee Voter Act was repealed by the Vote by Mail Law under *N.J.S.A.* 19:63–1 to –28. Now, any qualified voter can vote by mail for any reason or no reason at all using a vote by mail ballot. *N.J.S.A.* 19:63–3.

Under the Vote by Mail Law, the procedure of voting by a mail-in ballot is a relatively new process in the State of New Jersey. The voter must complete a vote by mail ballot application and mail the application to the County Clerk up to seven days prior to the election. *N.J.S.A.* 19:63–3; *N.J.S.A.* 19:63–6. When the vote by mail ballot application is received, the County Clerk has the singular authority to accept or reject the application pursuant to *N.J.S.A.* 19:63–8. If the County Clerk accepts the application, he or she processes it and sends a mail-in ballot to the registered voter, which the voter may then use to vote. *Ibid.* Once the vote by mail ballot application has been applied for, the standard form instructs the voter that he or she will not be able to vote in person. *Ibid.*

*N.J.S.A.* 19:63–6(a), in pertinent part, requires the County Clerk to publish a vote by mail ballot application in substantially the following form: "If any person has assisted you to complete the mail-in ballot application, the name, address and signature of the assistor must be provided on the application, and you must sign and date the application for it to be valid and processed." The State of New Jersey provides voters with a standard vote by mail ballot application used by every county in the state including Atlantic County. On the vote by mail ballot application, sections one through nine are mandatory and require the voter to indicate the type of election he or she intends on using the mail-in ballot

for, sign and date the application, and write his or her name, home address, date of birth, phone number, email address, and address to which the mail-in ballot should be sent. The application also includes sections ten through twelve that are captioned as optional and only to be completed if applicable. Section eleven, the section at issue here, is the assistor section and instructs: "Any person providing assistance to the voter in completing this application must complete this section." The name, address and signature of the assistor must be provided in this assistor section if applicable.

## FACTUAL BACKGROUND

Atlantic County is holding its general elections on November 3, 2015. The deadline for submitting a vote by mail ballot application to the County Clerk for this election is October 27, 2015. On or about August 31, 2015, GMP began mailing approximately 14,200 vote by mail ballot applications to certain registered voters in Atlantic County for the purpose of allowing voters to vote using a mail-in ballot in the upcoming election. GMP is a nationwide Super Political Action Committee focusing on electing Democratic candidates. Accompanying the vote by mail ballot applications distributed by GMP was a letter supporting local Democratic candidates. The letter was signed by William J. Hughes, Jr., a well-known local Democrat, and the letter also indicated that it was paid for by GMP. Cora Childs is a resident of New Jersey, registered to vote in Atlantic County, who certifies that she received, completed, and sent to the County Clerk a vote by mail ballot application distributed by GMP. Cora Childs is a resident of a nursing home in Atlantic County. After reviewing all of the vote by mail ballot applications, the County Clerk, Edward P. McGettigan, certifies that Cora Childs's application has not been found.

Every vote by mail ballot application mailed by GMP used the standard application provided by the State of New Jersey and supplied by the County Clerk. Every vote by mail ballot application distributed by GMP pre-printed the name (section 2) and address (section 3) of the registered voter to whom they were

sent, but were otherwise blank. These names and addresses were retrieved from a database available to the public. Other than these two sections, GMP did not pre-print the remaining seven mandatory sections, which include the voter's date of birth, date of application, address to which the mail-in ballot should be sent, phone number, email address, signature, or the type of election which the mail-ballot would be used for. GMP also did not pre-print or sign the assistor section.

According to GMP, 720 registered voters, including Cora Childs, have completed the vote by mail ballot application distributed by GMP and mailed them in by U.S. Mail to the County Clerk for processing. GMP certifies that, thus far, the County Clerk has received 720 completed vote by mail ballot applications pre-printed by GMP. The County Clerk certifies that the number of vote by mail ballot applications received is substantially less than 720. He further certifies that many of the applications distributed by GMP and completed and mailed in by voters came from voters already eligible to receive a mail-in ballot given that they were on the permanent list of voters that have requested a mail-in ballot for every election. The actual number of contested vote by mail ballot applications is substantially less than 720 and is about 200.

On or about September 22, 2015, the Chairman of the Atlantic County Republican Committee, Keith A. Davis, sent a letter to the Chairman of the Atlantic County Board of Elections, arguing that that vote by mail ballot applications distributed by GMP and completed and mailed by the voters were not valid because William Hughes Jr. should be considered an assistor pursuant to *N.J.S.A.* 19:63–6(a), and the assistor section of the application was not signed. On October 6, 2015, counsel for GMP had a telephone conversation with the County Clerk regarding the validity of the vote by mail ballot application distributed by GMP. Counsel for GMP indicated that he believed the vote by mail ballot applications distributed were valid and did not require any assistor signature but, if found otherwise, he as was prepared to file a complaint against Atlantic County. In an effort to avoid litigation,

counsel for GMP offered to arrange for a GMP representative to go to the County Clerk's office to sign the assistor section of the vote by mail ballot applications at issue. The County Clerk told counsel for GMP that he would have to discuss the matter with James Ferguson, County Counsel for Atlantic County.

The County Clerk called counsel for GMP that day and indicated that Ferguson agreed to the proposal and agreed that any vote by mail ballot applications signed by a GMP representative would be validated and processed. On October 8, 2015, a representative from GMP arrived at the County Clerk's office and signed, as an assistor, approximately 140 of the vote by mail ballot applications at issue. On October 13, 2015, Ferguson called counsel for GMP and indicated that he did not consider the vote by mail ballot applications signed by GMP's representative, as an assistor, to be valid and would instruct the County Clerk not to process those applications. As a result of the confusion over the interpretation of the definition of assistor and the back-and-forth between the County Clerk and counsel for GMP, there was a delay of twenty-one days from September 22, 2015, to October 13, 2015.

## PROCEDURAL BACKGROUND

On October 20, 2015, plaintiffs filed a verified complaint in lieu of prerogative writ and an order to show cause with temporary restraints against defendants, Edward P. McGettigan and James Ferguson (hereinafter "defendants"). On October 21, 2015, defendants filed opposition to the order to show cause with temporary restraints and an answer with affirmative defenses to the verified complaint in lieu of prerogative writ.

Additionally, on October 21, 2015, the Deputy Attorney General filed a letter on behalf of the New Jersey Attorney General in response to the order to show cause. This letter included an opinion from Assistant Attorney General Donna Kelly, dated on October 12, 2005, to all County Clerks stating as follows:

A campaign will send out an application pre-printed with the voter's name and address, leaving the voter to merely sign it and mail it to the appropriate county

clerk. We are of the view that the recently-enacted statute specifically does not prohibit this campaign practice. Nor can we conclude that the recent amendments were intended to restrict such activity. To the contrary, one of the stated reasons for the passage of [the statute] is to increase voter participation. The purpose of the above noted campaign effort can be similarly characterized.

In regards to pre-printing an assistor's information and signature, the Assistant Attorney General further advised:

As for the matter of using pre-printed absentee ballot applications on a mass level, inasmuch as the clear intent of this new provision is to provide the election officials with the identity of all persons completing an absentee ballot application, it would appear that whether assistance on the application is hand-written or pre-printed, is not relevant. Accordingly, the name, address and signature of the person chiefly responsible for the mailing can be pre-printed on the application. One proffered suggestion to provide the original signature of the assistor to each affected county clerk's office is likely a good measure....

Somehow none of the parties knew about this letter opinion. Also on October 21, 2015, counsel for the New Jersey Republican State Committee filed a letter outlining its intention to appear at oral argument and be joined in this matter. On October 22, 2015, the court held oral argument. The Deputy Attorney General appeared, as well as counsel for plaintiffs, defendant, and the New Jersey Republican State Committee. At oral argument, before addressing the merits of the case, the court granted the New Jersey Republican State Committee's application to intervene in accordance with *Rule* 4:33–2.

## *DISCUSSION*

I. Election laws are to liberally construed and not construed so as to deprive voters of their franchise

The court has before it a case concerning the Vote by Mail Law set forth under *N.J.S.A.* 19:63–1 to –28. The statutory language at issue is found under *N.J.S.A.* 19:63–6(a), which requires the County Clerk to publish the vote by mail ballot applications in substantially the following form: "If any person has *assisted you to complete the mail-in ballot application, the name, address and signature of the assistor must be provided* on the application, and

you must sign and date the application for it to be valid and processed" (emphasis added).

While this specific statutory language has yet to be the subject of judicial interpretation due to its fairly recent origin, we are directed by New Jersey court precedent to liberally construe this statute so as to preserve the paramount right of the voters to exercise the franchise. The issues before the court are whether a party that pre-prints a registered voter's name and address on a vote by mail ballot application is an assistor under *N.J.S.A.* 19:63–6(a) and, if so, whether, under the circumstances of this case, the failure of that party in completing the assistor section of the application renders it invalid. In general, New Jersey courts have long rejected strict interpretations of election laws. To the contrary, New Jersey courts have construed election laws in a liberal manner, one that encourages public participation in the election process. In *Kilmurray v. Gilfert,* 10 *N.J.* 435, 440, 91 *A.*2d 865 (1952), Chief Justice Vanderbilt restated the principles that guide this Court's decision now:

> Election laws are to be liberally construed so as to effectuate their purpose. They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons. The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.

As a general rule then, absent a compelling public interest, the court will interpret election laws so as to "preserve the paramount right of the voters to exercise the franchise." *N.J. Democratic Party v. Samson,* 175 *N.J.* 178, 190, 814 *A.*2d 1028 (2002). As the Supreme Court in *Catania v. Haberle,* 123 *N.J.* 438, 448, 588 *A.*2d 374 (1990) observed:

> Obviously, there will be cases in which provisions must be interpreted strictly, mandatorily, for in some cases it will be apparent that that interpretation serves important state interests, including orderly electoral processes. But those cases must be decided on their own facts, under the law involved.

Our courts traditionally give a liberal interpretation to election law—"liberal" in the sense of construing it to allow the greatest scope for public participation in the electoral process. *Ibid.; see also Deamer v. Jones,* 42 *N.J.* 516, 201 *A.*2d 712 (1964) (election

statutes should be liberally construed); *Sadloch v. Allan*, 25 *N.J.* 118, 135 *A.*2d 173 (1957) (same); *Wene v. Meyner*, 13 *N.J.* 185, 98 *A.*2d 573 (1953) (same); *but cf. Hutson v. Bass*, 54 *N.Y.*2d 772, 443 *N.Y.S.*2d 57, 426 *N.E.*2d 749 (1981) (although substantial compliance with election law is acceptable concerning details of form, there must be strict compliance with statutory commands on matters of prescribed content).

II. This court holds that the mere technical violation of failing to complete the assistors section of the vote by mail ballot application does not render the application invalid

With the principles stated above in mind, it is the tradition of New Jersey courts to effectuate the purpose and intent of a statute in spite of a voter's technical noncompliance with the election laws. *See Barrett v. Monmouth Cty. Bd. of Elections*, 307 *N.J.Super.* 403, 704 *A.*2d 1053 (Law Div.), *aff'd*, 307 *N.J.Super.* 191, 704 *A.*2d 945 (App.Div.1997); *see also N.J. Democratic Party, supra*, 175 *N.J.* at 196–97, 814 *A.*2d 1028 (allowing replacement of candidate who withdrew outside forty-eight day statutory window); *Catania, supra*, 123 *N.J.* 438, 588 *A.*2d 374 (allowing replacement of candidate despite lack of seven-day notice of Republican County Committee's meeting to fill vacancy); *Wene, supra*, 13 *N.J.* at 197, 98 *A.*2d 573 (permitting votes to be counted in gubernatorial primary election despite voters' technical noncompliance with governing statute); *Kilmurray, supra*, 10 *N.J.* at 441–42, 91 *A.*2d 865 (permitting substitution of Democratic nominee despite death of nominee two days after statutorily imposed thirty-seven-day window because public interest is served by multiparty political system); *Fiscella v. Nulton*, 22 *N.J.Super.* 367, 380–81, 92 *A.*2d 103 (App.Div.1952) (holding that "vacancy" was created when nominee Carmody failed to timely file a certificate of acceptance and that selection of Carmody as replacement candidate was valid); *Clemency v. Beech*, 306 *N.J.Super.* 244, 248, 703 *A.*2d 399 (Law Div.1997) (allowing candidate's name to appear on ballot despite late filing of required documents); *Fulbrook v. Reynolds*, 304 *N.J.Super.* 125, 133–34, 698 *A.*2d 564 (Law Div.

1997) (allowing replacement candidate for city council in order to further voters' choices).

In *Barrett* the court considered whether writing in voters' names and return addresses on absentee voting envelopes constituted assistance under the Absentee Voter Act. *Barrett, supra,* 307 *N.J.Super.* at 412, 704 *A.*2d 1053. The voters in *Barrett* were residents of a senior citizens' home who cast their own ballot, placed the ballot into the inner envelope, sealed the inner envelope, and signed the absentee voter certificate. *Id.* at 405–08, 704 *A.*2d 1053. However, due to their illegible writing, the voters were assisted by the owner of the home in completing their return address. *Ibid.* The County Board of Elections voided the ballots because the signatures did not match the handwriting on the return address and the assistor certification was unsigned. *Ibid.* The court held that assistance was provided, however, it was merely ministerial and the legislative purpose behind the requirement of assistor information and signature was not breached, as neither the secrecy of the vote nor the electoral process was compromised. *Id.* at 413, 704 *A.*2d 1053. Even though the literal reading of the law required any assistance to be certified, the court ordered the votes of absentee voters be validated and counted by the County Board of Elections. *Id.* at 408–11, 704 *A.*2d 1053. The court reasoned that to disenfranchise voters for, at worst, a good faith technical violation of the law would serve no legislative or other legitimate purpose. *Id.* at 416, 704 *A.*2d 1053.

The Appellate Court affirmed the decision of the Trial Court in *Barrett,* holding that the mere technical violation of the statute regarding the requirement for the signature of assistors should not invalidate the absentee ballot when the intent and spirit of the statute was not at risk. *Barrett v. Monmouth Cty. Bd. of Elections,* 307 *N.J.Super.* 191, 194, 704 *A.*2d 945 (App.Div.1997). The Appellate Court further emphasized that the language of the certification on the absentee ballot envelope did not define assistance and given the vague directions, it was understandable why

the assistors failed to sign in the capacity of helping the voter. *Ibid.*

■ This court finds the *Barrett* decision to be persuasive and applicable to the matter before the court. The court acknowledges the fact that there are very few substantive sections found in the mandatory sections of the vote by mail ballot application including the voter's name, address, date of birth, signature, and address to which the mail-in ballot should be sent. Thus, pre-printing two substantive sections, as GMP did, technically constitutes as assistance even though it was merely ministerial in nature. However, similar to the absentee ballot in *Barrett,* neither the language of the vote by mail ballot application nor the statute defines assistance. Although the statute makes it mandatory to include the assistor information and signature "when applicable," with such vague directions as to what constitutes assistance and its threshold, it is understandable why GMP failed to sign as an assistor, much like the assistors in *Barrett.* Although the parties here are sophisticated and had access to the statute, the very existence of this litigation and the differing interpretations of the statutory language evidences the vagueness and lack of direction provided by the statute and vote by mail ballot application.

Much like in *Barrett,* to disenfranchise voters for, at worst, a good faith technical violation of the law serves no legislative or other legitimate purpose. This court finds that the mere technical violation of failing to complete the assistor section does not jeopardize the intent or spirit of *N.J.S.A.* 19:63–6(a). In 2009, when the Absentee Voter Act was repealed by the Vote by Mail Law under *N.J.S.A.* 19:63–1 to –28, the Legislature lifted constraints on those persons who may vote using an absentee ballot and allowed any qualified voter to vote by mail for any reason or no reason at all under the new law. *See N.J.S.A.* 19:63–3. This Court holds that the overriding legislative intent behind the Vote by Mail Law is to increase voter participation in the election

process and facilitate the franchise of voters who would not otherwise be able to vote in person.

The court also finds persuasive the letter opinion of Assistant Attorney General Donna Kelly [1] dated October 12, 2005, regarding the mass distribution of absentee ballot applications, in which she states that the practice of pre-printing the names and addresses of voters on an absentee ballot application is not prohibited and the reason for the statute is to increase voter participation. She stated, in pertinent part:

> A campaign will send out an application pre-printed with the voter's name and address, leaving the voter to merely sign it and mail it to the appropriate county clerk. We are of the view that the recently-enacted statute specifically does not prohibit this campaign practice. Nor can we conclude that the recent amendments were intended to restrict such activity. To the contrary, one of the stated reasons for the passage of [the statute] is to increase voter participation. The purpose of the above noted campaign effort can be similarly characterized.

Similarly here, the overriding legislative intent behind the Vote by Mail Law is to increase voter participation and the statute does not expressly prohibit the practice of pre-printing a voter's name and address. According to the Assistant Attorney General, also pre-printing as opposed to handwriting the assistor's section of the absentee ballot application is permissible. She stated as follows:

> As for the matter of using pre-printed absentee ballot applications on a mass level, inasmuch as the clear intent of this new provision is to provide the election officials with the identity of all persons completing an absentee ballot application, it would appear that whether assistance on the application is hand-written or pre-printed, is not relevant. Accordingly, the name, address and signature of the person chiefly responsible for the mailing can be pre-printed on the application.

Regarding the legislative intent of the assistor's section of the vote by mail ballot application, this court concludes that the legislative intent of the assistor section is to protect the integrity of the electoral process by providing for transparency to the voters who are being assisted and the election officers who receive the application. Under the circumstances here, transparency was

---

[1] Donna Kelly is a highly respected Assistant Attorney General in the area of election law. This court is persuaded by her opinion and finds that she was ahead of her time in anticipating the issues outlined therein.

not an issue. Accompanying GMP's pre-printed vote by mail ballot application was a letter endorsing Democratic candidates and indicating that it was paid for by GMP. Evidenced from the Atlantic County Republican Committee's letter to the County Clerk disputing the validity of GMP's pre-printed applications dated September 22, 2015, the Atlantic County Republican Committee and County Clerk knew that GMP distributed these applications at least from the date that letter. The County Clerk certified that the vote by mail ballot applications distributed by GMP were distinguishable in that they included a bar code on the top. The identification of the "assistor" here is known and transparent to all parties involved. In other words, this is not a situation of stealth assistors operating in the shadows. Transparency existed in that GMP was working in the light for all to see. To protect the integrity of the electoral process, the Legislature attempted to prevent unidentified assistors working in the shadows; however that is not the case here.

This Court holds that the mere technical violation of *N.J.S.A.* 19:63–6(a) regarding the requirement of an assistor's information and signature does not invalidate the vote by mail ballot application here where the intent and spirit of the statute is not threatened. Importantly, the court in *Barrett* validated an absentee ballot which did not meet the technical requirements of the law, whereas here the court is only validating an application that subsequently leads to receiving a mail-in ballot. The court here is contemplating a much less serious alleged threat to the integrity of the electoral process. No evidence was presented to give any reason to suspect deceit or fraud risking either the transparency of GMP or the integrity of the electoral process. The court further finds that plaintiffs would be prejudiced if the applications are not validated given the time that has passed due to the discussions between the County Clerk and GMP as to completion of the assistor section and the County Clerk's promise and recession of the promise to validate applications thereafter signed by the GMP representative. This confusion and delay reaffirms the

vagueness and lack of direction in the statute—a factor also considered by the Appellate Court in its analysis in *Barrett.*

The court further finds that the potential disenfranchisement of voters who anticipate submitting a mail-in ballot for this election cannot be redressed in any other way. Without accepting the vote by mail ballot applications distributed by GMP but completed and signed by the voters, there will be innocent voters, who acted in good faith, who will be greatly harmed if injunctive relief is not granted. The court does not doubt the diligent efforts of the County Clerk to notify and request resubmission of applications to voters whose application at issue was rejected. However, the deadline for submitting a vote by mail ballot application to the County Clerk for this upcoming election is on October 27, 2015. Many voters whom the County Clerk has notified will not likely be able to recomplete and resubmit their applications in time. Many voters whose applications the County Clerk has recently received in the interim of this litigation will not likely even receive correspondence before the deadline. Another factor that weighs in support of granting injunctive relief is the delay of three weeks due to the confusion, miscommunication, and vagueness in the interpretation of *N.J.S.A.* 19:63–6(a).

Assistant County Counsel argues that these voters may still submit their vote by mail ballot application to the County Clerk in person no later than 3:00 p.m. on November 2, 2015, or may vote in person the day of the election using a provisional ballot. These remedies will not likely redress the harm because most voters who submitted a vote by mail ballot application presumably did so because mobility is an issue for them (i.e. disability, elderly, proximity, illness, etc.). Even if mobility is not an issue, voters may not be able to vote in person for other reasons which necessitated a mail-in ballot in the first instance or voters may be under the impression that doing so would be futile given that the application expressly states, "[o]nce you apply for a mail-in ballot you will not be permitted to vote by machine at your polling place in the same election." Ultimately, this court finds that a portion

of the voters who have thus far submitted and will submit the vote by mail ballot application at issue will likely not end up voting at all. Therefore, this court holds that injunctive relief is necessary to prevent irreparable harm to the plaintiffs. This court will err on the side of protecting the precious right of Atlantic County citizens to cast their vote and will not frustrate these rights for a mere technical violation of *N.J.S.A.* 19:63–6(a), which is to be liberally construed.

## *CONCLUSION*

Thus, for the reasons set forth in this opinion, the court holds that, under the circumstances of this case, while there was a technical violation in GMP's failure to complete the assistor section of the vote by mail ballot application, nonetheless, this technical violation does not render the applications distributed by GMP invalid. The court grants plaintiffs' petition for injunctive relief compelling the County Clerk to accept all vote by mail ballot applications submitted by qualified registered voters and to not reject those applications for the sole reason that GMP did not complete the assistor section.